**UNITED STATES of America, Appellee,**

v.

**Peter CANCILLA, Appellant.**

**No. 524, Docket 82–1341.**

United States Court of Appeals, Second Circuit.

Argued Dec. 6, 1983.

Decided Jan. 13, 1984.

Brian E. Maas, Asst. U.S. Atty., E.D. N.Y., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Allyne R. Ross, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for appellee.

Michael B. Pollack, New York City, for appellant.

Before FEINBERG, Chief Judge, KEARSE, Circuit Judge, and RE, Chief Judge, United States Court of International Trade.*

FEINBERG, Chief Judge:

Peter Cancilla appeals from a judgment of conviction in September 1982, of the United States District Court for the Eastern District of New York, Thomas C. Platt, J., after a jury trial in which he and his wife Teresa Cancilla, who has not appealed, were convicted on fourteen counts of mail fraud in violation of 18 U.S.C. §§ 1341 and 1342. Peter Cancilla received a sentence of four years in prison and a $14,000 fine. On appeal, the government takes the position that this court should assume as true an allegation that has come to its attention that defendant's trial counsel had himself engaged in criminal activity related to the conduct for which defendant was convicted and should further assume that defendant had no knowledge of any such activity by his counsel. The issue on appeal is whether on the unusual facts of this case there was a conflict of interest that violated defendant's Sixth Amendment right to counsel. For reasons given below, we answer that question in the affirmative. We reverse and remand for a new trial.

* Sitting by designation.

## I.

Briefly, the Cancillas were convicted of carrying out two schemes in which they insured seriously damaged cars—first a Mercedes and then an Oldsmobile—without disclosing their already damaged condition and subsequently submitted false insurance claims for those damages, stating they were caused by accidents which in fact had never occurred. They were paid $3,458.29 on the first claim.

At trial, the Cancillas were represented by separate counsel. Peter did not call any witnesses, but argued that under F.R. Crim.P. 29(a) he was entitled to a judgment of acquittal. Teresa attempted to show that, unknown to the Cancillas, the body shop to which the Mercedes was taken might have installed damaged parts from a previous accident involving the Mercedes, thus inflating the insurance adjuster's estimate of necessary repairs. She argued that the Mercedes had been fully repaired after the first accident and suggested that somehow the damaged parts went from the body shop that did the earlier repairs to the body shop that allegedly switched parts, both located in Brooklyn, New York. With regard to the Oldsmobile claim, Teresa argued that the insurance company mistakenly understood her claim to cover the serious pre-existing damage when in fact she intended the claim to cover only lesser incremental damage that allegedly had been sustained after the car was insured.

When Teresa's switched parts defense emerged at trial, the judge initiated the first of a series of conferences with counsel at which he voiced his concern that Peter's counsel appeared to have a conflict of interest. The apparent conflict stemmed from counsel's prior and arguably continuing representation of the president of the body shop that repaired the Mercedes after the first accident, who had recently been convicted in a proceeding before Judge Platt of a similar insurance fraud scheme involving that body shop and a third party. The judge was concerned that Teresa's defense, as it unfolded, might implicate counsel's former client in additional criminal conduct.

Ultimately, in considering a motion for a new trial brought by Peter's new counsel, the judge concluded that Teresa's fully presented defense did not create such a conflict and that, even if it did, Peter's defense was not adversely affected. The judge denied the motion on these grounds. The conflict arising out of trial counsel's prior representation is urged in this appeal, but in light of our disposition of the case there is no need to discuss it further.

Cancilla appealed from his conviction in September 1982. While the appeal was pending, the government moved in this court to remand the case to the district court to augment the record with further information it had recently discovered which "could have a bearing" on the claim of conflict of interest. This panel granted the motion in February 1983, with a direction that any appeal following the remand be referred to the same panel.

On remand, the government advised the district court by affidavit that it had learned while the appeal was pending of an allegation that Peter Cancilla's trial counsel may have himself conspired with someone connected to the Cancilla schemes on similar fraudulent insurance claims involving cars owned by counsel.

The district court held four hearings in camera and sealed the transcripts and related documents. Cancilla and his new counsel were prohibited from revealing to anyone the new information disclosed by the government. The government refused to disclose the underlying details of the allegations against trial counsel or of its investigation. Rather, it took the position for purposes of the remand proceedings that the court should assume trial counsel had labored under a "most egregious" conflict of interest while defending Peter Cancilla because counsel may possibly have been involved in criminal activity similar to the charges against Cancilla.[1] The government

---

1. Throughout the remainder of this opinion, in view of the government's position, we assume arguendo that counsel did engage in such criminal activities. Of course, we have no indepen-

also conceded, for purposes of the remand, that Cancilla knew nothing of his counsel's prior activities. The government argued, however, that Cancilla had the burden of showing that the conflict adversely affected his counsel's performance at trial. Initially, Judge Platt felt quite strongly that the conflict was so outrageous that there was no alternative to ordering a new trial. After briefing, however, he accepted the government's position that defendant had the burden of showing adverse impact. Because defendant failed to make such a showing, Judge Platt refused to grant a new trial. Cancilla again appealed, and the case is again before this panel.

## II.

■ As a preliminary matter, we must address Cancilla's argument that the government's evidence was insufficient to establish that he knowingly participated in either scheme to defraud the insurers or knowingly caused the use of the mails. The argument warrants little discussion. Cancilla would have us believe he was an innocent dupe in his wife's frauds, but the evidence of his knowing participation, if not his dominant role, is substantial. There was evidence from which the jury could conclude that: immediately after receiving payment of $3,693.50 for damages to his Mercedes and without repairing it, Cancilla transferred the car to his wife in her maiden name at an address other than the residence where they both lived and which Cancilla had used in previously insuring the car; Cancilla made a special visit to the insurance company's office to pick up the check paying his wife's fraudulent claim for pre-existing damage to the Mercedes and cashed the check at his bank after obtaining his wife's endorsement; and in connection with the fraudulent Oldsmobile claim Cancilla gave a detailed description of the car and the circumstances of the fictional accident in a consensually taped phone conversation with the claims examiner. In short, the record as a whole presents ample evidence from which the jury could conclude beyond a reasonable doubt that Cancilla knowingly participated in the planning and execution of the two schemes, and that the use of the mails was an inevitable and foreseeable part of those schemes.

## III.

The information concerning trial counsel's own alleged criminal activities, which were similar to the Cancillas' schemes and involved a possible co-conspirator of the Cancillas did not surface until after trial. The government argues, and apparently the district judge agreed, that under *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980), a defendant has the burden of showing an adverse effect on his lawyer's performance when a conflict of interest surfaces for the first time after trial. Cancilla's new attorney declined to introduce any evidence on remand to show that Cancilla's defense was adversely affected, maintaining that the government had the burden of showing lack of prejudice. The district judge found that his earlier determination of no adverse effect was still valid. On appeal, Cancilla invokes the per se rule of our recent decision in *Solina v. United States,* 709 F.2d 160 (2d Cir.1983).

In that case, we held that a defendant represented by an unlicensed attorney could overturn his conviction for bank robbery 13 years after the event, despite "overwhelming" evidence of guilt, because unknown to him, his retained trial counsel was not licensed to practice law. Id. at 163. The court saw the problem of unlicensed representation as "not simply one of competence," but that the putative attorney "was engaging in a crime." The key consideration was that:

> Such a person cannot be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his background and discover his lack of credentials. Yet a criminal defendant is entitled to be

dent view whether that is so and our failure to so state repeatedly does not indicate that we

do.

represented by someone free from such constraints.

Id. at 164. Moreover, the court held with obvious reluctance that prior Supreme Court decisions compelled the conclusion that in such a situation "a *per se* rule appears . . . to be required," with no room for a "harmless error analysis." Id. at 168–69.

▪ We conclude with a similar lack of enthusiasm that the principle of *Solina* applies to the personal conflict of interest of Cancilla's trial counsel and requires us to reverse the judgment of the district court. As noted, the government asks us to assume for the purpose of this appeal that Cancilla's trial counsel committed crimes with a possible co-conspirator of Cancilla similar to those for which Cancilla was on trial and that Cancilla was unaware of this. But with the similarity of counsel's criminal activities to Cancilla's schemes and the link between them, it must have occurred to counsel that a vigorous defense might uncover evidence or prompt testimony revealing his own crimes, even more so than in *Solina*. It is noteworthy that Cancilla, on advice of his counsel, chose not to present a defense. Moreover, representation of Cancilla in ways other than by a vigorous defense may have been affected. It is difficult to see how counsel conflicted in this way could impartially have given Cancilla advice on whether or not to take a guilty plea, since counsel might have feared that acceptance of a plea would turn on Cancilla's cooperation, which might lead to discovery of the link to counsel's own activities. In such circumstances, proof of this type of conflict, which the government here asks the court to assume, constitutes under *Solina* a per se violation of the Sixth Amendment right to effective assistance of counsel.

The government argues that the reasoning of *Solina* is inapplicable to this case because *Solina* "did not raise any question of conflict of interest." We agree that the conflict there raised was not the more usual one of multiple representation, see, e.g., *Camera v. Fogg,* 658 F.2d 80 (2d Cir.), cert. denied, 454 U.S. 1129, 102 S.Ct. 981, 71 L.Ed.2d 117 (1981). But to assert that counsel in *Solina* had no "conflict" is myop-

ic. What could be more of a conflict than a concern over getting oneself into trouble with criminal law enforcement authorities? The government appears to recognize this in describing the rationale of *Solina* as "the danger that the person acting as a lawyer might fear that a vigorous defense might cause the court or the government to inquire into his background and learn of his criminal activity." As indicated above, there were similar, probably greater, dangers here because the very evidence at trial or in plea negotiations might well lead to discovery of the attorney's prior criminal activity.

Nor do we regard *Solina* as inconsistent with *Cuyler v. Sullivan,* from which it liberally quoted, albeit in a different context, 709 F.2d at 165. The Court in *Cuyler* was concerned with the effect of multiple representation, a situation that invariably raises the *possibility* of harmful conflict that often does not exist in fact. *Solina* involved a different type of conflict for a lawyer, which is always real, not simply possible, and which, by its nature, is so threatening as to justify a presumption that the adequacy of representation was affected.

Moreover, apart from the controlling effect of the reasoning of *Solina, Cuyler* made clear that once a defendant "shows that a conflict of interest actually affected the adequacy of his representation [he] need not demonstrate prejudice in order to obtain relief." 446 U.S. at 349–50, 100 S.Ct. at 1718–19; see also *Camera v. Fogg,* supra, 658 F.2d at 87. It is very clear from the record here that once the trial court raised with counsel the possibility that he might be prejudicing his former client, counsel abandoned questions designed to show that a body shop, not Cancilla, might have committed the fraud. At that time, the court knew only of the possible danger to counsel's former client, but the court's inquisitiveness may have caused counsel to be more concerned about the possible danger to himself. That possibility makes even clearer now the effect on the adequacy of the representation afforded Cancilla. The government argues that counsel for Mrs. Cancilla did explore the switched parts defense, so that appellant had the best of both

worlds: he did not have to present any witnesses, including himself, as indeed he did not, yet enjoyed the benefit of the arguments and defense put on by his wife. This assumes, however, that there was a planned strategy, acquiesced in by appellant, with full disclosure of his counsel's prior criminal acts. But that possibility is eliminated because the government, somewhat more clearly here than below, has asked the court to assume the truth of the allegation against counsel and Cancilla's lack of any knowledge of counsel's assumed activity.

The government also points to several analogous cases in other circuits where defendants asserting for the first time after trial that their lawyers labored under a personal conflict of interest were required under *Cuyler* to show an adverse effect on their lawyers' representation. In *United States v. Knight,* 680 F.2d 470 (6th Cir.1982) (per curiam), cert. denied, —— U.S. ——, 103 S.Ct. 723, 74 L.Ed.2d 950 (1983), trial counsel knew they were under investigation as suspects in the theft of documents related to defendant's case from the United States Attorney's Office; in *Briguglio v. United States,* 675 F.2d 81 (3d Cir.1982) (per curiam), counsel had been advised pre-trial that he was under investigation by the United States Attorney's Office prosecuting defendant; and in *United States v. Canessa,* 644 F.2d 61 (1st Cir.1981), counsel for a time was also a target of the very grand jury investigation he allegedly prevented defendant from cooperating with.

We do not think that the cases justify an affirmance here. First, these cases are distinguishable from *Solina* and the case at bar. The attention of the authorities had already focused on the lawyers, and investigations were under way. Here and in *Solina* the authorities had no inkling of counsel's criminal activities and had no reason to inquire, but a wrong step by counsel in representing their clients might well have drawn unwanted attention to themselves. Second, to the extent these cases require a showing of adverse effect on the conflicted lawyer's representation of defendant, we believe, as discussed earlier that Cancilla's defense was adversely affected when his trial counsel backed off from pursuing a switched parts defense. *Cuyler v. Sullivan,* supra, 446 U.S. at 349–50, 100 S.Ct. at 1718–19, requires no further showing of prejudice beyond this; it is irrelevant that such a defense is unlikely to prevail and was unsuccessfully urged by Mrs. Cancilla. Finally, even if the unsuspected-criminality distinction we have drawn is considered immaterial and even if an adverse effect on Cancilla's representation has not been shown, we think that this case is governed by the per se rule of *Solina.*[2]

The judgment of the district court is reversed and the case is remanded for a new trial.

2. At oral argument the government renewed its motion to seal the record and briefs on appeal to prevent dissemination of the sensitive information concerning counsel's alleged criminal activities. Because these documents contain some information beyond what we have felt necessary to discuss in this opinion, the motion is granted, without prejudice to an application in the district court to vacate the seal order previously entered there. Should the district court unseal the transcript of its post-remand hearings and related documents, our seal order shall automatically terminate.