**UNITED STATES of America,
Respondent–Appellee,**

v.

**Antonino AIELLO,
Petitioner–Appellant.**

**No. 259, Docket 89–2220.**

United States Court of Appeals,
Second Circuit.

Argued Oct. 25, 1989.

Decided April 2, 1990.

Martin G. Weinberg, Boston, Mass. (Lillian A. Wilmore, Boston, Mass., of counsel), for petitioner-appellant.

Andrew C. McCarthy, Asst. U.S. Atty., New York City (Benito Romano, U.S. Atty. S.D. New York, Kerry Martin Bartlett, Asst. U.S. Atty., New York City, of counsel), for respondent-appellee.

Before OAKES, Chief Judge, and KEARSE and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Petitioner-appellant Antonino Aiello appeals from an Order of the United States District Court for the Southern District of New York (Kevin T. Duffy, *J.*) denying his motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 (1982). In February 1988, Aiello was convicted on numerous counts of narcotic-related crimes after a two-month jury trial before Judge Duffy. On direct appeal, this court affirmed the judgment of the district court. *See United States v. Aiello,* 864 F.2d 257 (2d Cir.1988) (*"Aiello II"*). Aiello now has brought this habeas motion seeking to set aside his conviction on the ground of an alleged conflict of interest on the part of his trial counsel.

For the reasons stated below, we affirm the order of the district court denying his Section 2255 motion.

## BACKGROUND

The extensive evidence that Aiello acted as the "kingpin" of an enormously lucrative narcotics enterprise from at least 1978 through 1984 is recounted in our opinion affirming his conviction. *See Aiello II,* 864 F.2d at 260–65. At two jury trials before Judge Duffy, Aiello was represented by Joel Winograd, Esq. The first trial was

declared a mistrial after four weeks of the government's direct case. At the second trial, the jury convicted Aiello of numerous counts of narcotic-related conspiracy in violation of 21 U.S.C. § 846 (1982), distributing and possession with intent to distribute heroin and cocaine in violation of 21 U.S.C. §§ 812, 841(a)(1) & (b)(1)(A) (1982 & Supp. III 1985) and 18 U.S.C. § 2 (1982), and operating a continuing criminal enterprise for the distribution of narcotics in violation of 21 U.S.C. § 848 (1982 & Supp. III 1985). On March 18, 1988, the district court imposed, *inter alia,* a sentence of life imprisonment.

After we affirmed Aiello's conviction on direct appeal, new counsel filed a Section 2255 petition before Judge Duffy. Through the habeas petition, Aiello sought to set aside his conviction on the basis that a conflict of interest between Winograd and himself had resulted in a less than vigorous representation. After examining the record, and without conducting an evidentiary hearing, the district court dismissed the Section 2255 petition.

According to papers submitted to the district court by Aiello in support of his Section 2255 petition, Winograd was under investigation by the Organized Crime Strike Force for the Eastern District of New York ("Eastern District Strike Force" or "Strike Force"). The Strike Force conducted the investigation before and during the time of the proceedings against Aiello. The investigation concerned allegations that Winograd participated in the obstruction of justice and subornation of perjury in the 1982 case, *United States v. Cunningham,* No. 81 Cr. 480 (E.D.N.Y.1982). The *Cunningham* case was a result of an investigation by the Eastern District Strike Force into labor racketeering offenses involving the Allied International Union and the Allied Security Health and Welfare Fund (collectively "Allied"). Winograd had represented Salvatore Ponte, a defendant in *Cunningham.* In November 1986, approximately two months prior to Winograd's filing a notice of appearance for Aiello, Winograd was made aware of the Strike Force investigation. At that time, the government moved to disqualify him from

representing Mitchell Goldblatt in a criminal case in the United States District Court for the Eastern District of New York. That case, *United States v. Goldblatt,* No. 85 Cr. 7555 (E.D.N.Y.1986), also involved labor racketeering activities at Allied. In light of the investigation of Winograd's alleged criminal conduct in *Cunningham,* Winograd voluntarily withdrew as Goldblatt's counsel in December 1986.

Several months prior to the commencement of Aiello's first trial, the Eastern District Strike Force received authorization to expand the scope of its investigation of Winograd to encompass possible tax-related offenses. Ten days after Aiello was sentenced, Winograd entered into a plea agreement with the Special Counsel for the Eastern District Strike Force. As a result, Winograd pled guilty to a one count Information charging him with tax evasion in 1985. A government sentencing memorandum detailed Winograd's tax crimes since the mid–1970's and mentioned the allegations of Winograd's obstruction of justice and subornation of perjury in connection with the *Cunningham* trial.

In support of his Section 2255 petition, Aiello submitted an affidavit in which he maintained that he suspected Winograd's attention was diverted during his second trial. The affidavit claims that Winograd "started acting very strangely" in November 1987, shortly after the start of the second trial. Aiello further asserts that Winograd never informed him that Winograd had legal problems in the Eastern District of New York. There are no allegations against Winograd of any wrongdoing committed in the Southern District of New York where the Aiello prosecution transpired. Nor is there any suggestion that Winograd was in any way a participant in the Aiello drug empire.

## DISCUSSION

### A. *The Alleged Conflict of Interest*

■ Aiello argues that Winograd's alleged conflict of interest resulted in a *per se* violation of the sixth amendment right to effective assistance of counsel. In order to

sustain such a claim, "a defendant must establish that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980); *see also United States v. Aiello*, 814 F.2d 109, 112 (2d Cir.1987) ("*Aiello I*"). The standard in *Cuyler* rests on the rationale that some conflicts of interest so affront the right to effective assistance of counsel as to constitute a *per se* violation of the sixth amendment. *Cuyler*, 446 U.S. at 349–50, 100 S.Ct. at 1718–19. Upon a showing of such a conflict, a defendant need not demonstrate prejudice. *Id.* Instead, "[t]he conflict itself demonstrate[s] a denial of the 'right to have the effective assistance of counsel.' " *Id.* at 349, 100 S.Ct. at 1718 (quoting *Glasser v. United States*, 315 U.S. 60, 76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942)).

In support of his claim, Aiello relies on two cases of this circuit consistent with the *Cuyler* rationale. In *Solina v. United States*, 709 F.2d 160 (2d Cir.1983) we found a *per se* sixth amendment violation where a criminal defendant was represented by a person unauthorized to practice law. We reasoned that an unauthorized attorney could not "be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his background and discover his lack of credentials." *Id.* at 164. Such a flagrant conflict, we observed, could not be reconciled with the right to effective assistance of counsel by any kind of harmless error analysis. *Id.* at 168–69.

Subsequently, we extended our reasoning in *Solina* to another set of facts in *United States v. Cancilla*, 725 F.2d 867 (2d Cir.1984). *Cancilla* involved trial counsel who was actually implicated in the very crime for which his client was on trial. As in *Solina*, we concluded that the clear conflict of interest between trial counsel's conducting a vigorous defense and risking exposure of his own wrongdoing constituted a *per se* violation of the sixth amendment. *Id.* at 870. Confronted with such *per se* constitutional violations, we reversed the convictions of the criminal defendants in both of these cases, "without enthusiasm".

*Solina*, 709 F.2d at 169; *see also Cancilla*, 725 F.2d at 870.

More recently, our reasoning was further elucidated in *Waterhouse v. Rodriguez*, 848 F.2d 375 (2d Cir.1988), *cert. denied*, —— U.S. ——, 110 S.Ct. 564, 107 L.Ed.2d 558 (1989). In *Waterhouse*, we refused to reverse a criminal defendant's conviction on the ground that he was represented at a pre-trial proceeding by a lawyer who was subsequently disbarred as a result of a matter unrelated to the crimes for which the defendant was being tried. After a guilty plea to second degree murder in state court, the defendant in *Waterhouse* brought a habeas petition in which he argued that "the pressure of facing disbarment substantially affected" his lawyer's ability to provide effective representation. *Id.* at 380. In reversing the federal district court's grant of the habeas petition, we explained:

> Unlike the phony attorney in *Solina*, or the attorney who himself was guilty of the same crimes for which his client was being tried in *Cancilla*, [counsel] had no reason to fear that vigorous advocacy on behalf of his client would expose him to criminal liability or any other sanction. If anything, the charges pending against [counsel] provided an incentive for the vigorous efforts he appears to have expended. Moreover, the charges underlying his disbarment were unrelated to his representation of Waterhouse....

*Id.* at 383. Thus, we have recently refused an invitation to extend the parameters of the *per se* rule "beyond the sort of egregious conduct present in *Solina* and *Cancilla*." *Id.*

In accordance with *Waterhouse*, we must again decline such an invitation. First, unlike the facts in *Cancilla*, it is clear that Winograd's purported crimes were totally unrelated to the narcotics and tax crimes for which Aiello was being tried. By conducting a vigorous defense of Aiello, Winograd would not have risked revealing anything about the completely unrelated alleged wrongdoing for which Winograd was under investigation. Second, in distinction from the attorney in *Cancilla*,

Winograd was the subject of investigation by the Eastern District Strike Force long before Aiello's trial commenced. Obviously, Winograd's representation of Aiello in the United States District Court for the Southern District of New York was not the impetus for the investigation previously set in motion by the Eastern District Strike Force. Moreover, Aiello has proffered no basis upon which to believe that Winograd's conduct of Aiello's defense in one District was intended to curry favor with the prosecutors in another District. Finally, the facts of this case plainly differ from those of *Solina*, since it has never been in doubt that Winograd was an authorized attorney at the time of the Aiello trials. To be sure, Winograd was not in danger of being exposed as some kind of impostor. It follows that the *per se* rule does not apply to the facts of this case.

Today's decision is not intended to limit the *per se* rule exclusively to the precise fact situations found in *Solina* and *Cancilla*. Rather, lest our standards undercut the sensitive relationship between attorney and client, we repudiate a rigid approach in favor of a consideration of the facts of each case. In so doing, we are guided by the principle that a theoretical or merely speculative conflict of interest by itself never invokes the *per se* rule. Only a showing of an actual conflict of interest requires automatic reversal of a criminal defendant's otherwise proper conviction. Both in his petition before the district court and on this appeal, the defendant has failed to make such a showing.

### B. *Adverse Lawyer Performance*

We next entertain Aiello's assertion that the alleged conflict of interest is evident from the inadequacies of Winograd's representation. Aiello's failure to show an actual conflict of interest raises the burden that he must meet for a successful Section 2255 petition. His claim must now be considered under the standards applicable to any other criminal defendant who seeks collateral relief against an otherwise proper conviction. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *accord Cuevas v.*

*Henderson*, 801 F.2d 586, 589 (2d Cir.1986), *cert. denied*, 480 U.S. 908, 107 S.Ct. 1354, 94 L.Ed.2d 524 (1987); *United States v. Cruz*, 785 F.2d 399, 405 (2d Cir.1986). "To prevail on such a claim the defendant must overcome a presumption that his counsel's conduct was reasonable" by satisfying the two-prong standard framed in *Strickland. Cruz*, 785 F.2d at 405. Pursuant to *Strickland*, the defendant must show that (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688 and 694, 104 S.Ct. at 2064 and 2068. An analysis of Aiello's claims of Winograd's purported failings reveals that Aiello cannot meet the increased burden.

Winograd succeeded in convincing the district court to exclude some of the government's most convincing proof including evidence of where, how and from whom Aiello was supplied, as well as evidence that would have bolstered the testimony of two significant accomplice witnesses. In addition, Winograd skillfully conducted a lengthy cross-examination of an undercover detective that resulted in a mistrial after four weeks of the government's presentation of its direct case. Moreover, Winograd's representation resulted in dismissal of the tax counts against Aiello on a Fed.R. Crim.P. 29 motion, and acquittal on four narcotics charges in the indictment. In light of the record, it is difficult to find credible Aiello's contention on this appeal that Winograd was "sidetracked by personal trauma." However, Aiello asserts five separate issues alleged to constitute a "lapse" in Winograd's effectiveness.

■ First, Aiello complains that Winograd failed to call two critical exculpatory witnesses, Giuseppe Guisto and Filippo Gambina. Both entered pleas of guilty to charges of conspiracy to distribute narcotics with Aiello. At trial, the government presented evidence that both men functioned as underlings in Aiello's narcotics enterprise. Most significantly, any exculpatory testimony they might have provided, had Winograd elected to call them, would

have been impeachable as a result of each man's shifting of blame to Aiello at their respective sentencing hearings. Winograd interviewed both men, and made a tactical decision not to call them. Under the circumstances, his decision can hardly be considered a lapse in representation.

■ Second, Aiello now objects to Winograd's failure to challenge the authenticity of a ledger that contained the entries relating to the narcotics business. Aiello suggests that a handwriting expert's opinion proves he did not make the entries. The government, however, never maintained that Aiello performed routine bookkeeping functions in the enterprise which he commanded. As far as the government's case against Aiello was concerned, it was sufficient that the ledger, containing information about the purchase and sale of large quantities of drugs, was discovered at Aiello's home. It was proper for the district court to allow the admission of the self authenticating ledger discovered at the Aiello home. *See* Fed.R.Evid. 901(b)(4); *United States v. Jaramillo–Montoya*, 834 F.2d 276, 279 (2d Cir.1987), *cert. denied*, 486 U.S. 1023, 108 S.Ct. 1998, 100 L.Ed.2d 229 (1988) (co-conspirator hearsay within address book admissible); *United States v. McGrath*, 613 F.2d 361, 368 (2d Cir.1979), *cert. denied*, 446 U.S. 967, 100 S.Ct. 2946, 64 L.Ed.2d 827 (1980) (notebook containing various entries of drug dealings was properly admitted in trial of co-conspirators). Moreover, Winograd was aware that Aiello's wife had admitted in deposition testimony that she made several of the entries. Winograd had successfully convinced the district court to exclude the deposition testimony. If Winograd had put the ledger in issue by attempting to prove Aiello did not make entries, the district court may well have reconsidered its decision. Thus, if anything, Winograd's choice not to challenge the ledger plainly reflects a perspicacious, not a lapsed, defense.

■ Third, Aiello contends that Winograd's failure to raise appropriate objections exposed the jury to inadmissible hearsay during the testimony of government witness Lawrence Robinson. In fact, Winograd made various objections on hearsay grounds during Robinson's testimony at the first trial, and the district court overruled almost all of the objections. At the second trial, Winograd obviously made a judgment to avoid what he thought would be harmful in the presence of the jury. In any event, the government's elicitations of Robinson's testimony regarding the statements of Aiello's co-conspirators were properly admitted. *See United States v. Kusek*, 844 F.2d 942, 950 (2d Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 157, 102 L.Ed.2d 128 (1988) (statements made during the course and in furtherance of a conspiracy are admissible against all its members); *United States v. Rahme*, 813 F.2d 31, 35–36 (2d Cir.1987) (same).

■ Fourth, Aiello proposes that Winograd blundered by withdrawing his motion to transfer the tax counts against Aiello to the Eastern District of New York. Even if this claim had any merit, it overlooks the fact that due to Winograd's representation, all of the tax counts against Aiello were dismissed on a Fed.R.Crim.P. 29 motion. Furthermore, severance of the tax counts would not have kept the evidence of Aiello's enormous drug wealth out of the case. Aside from proof of possible tax fraud, the jury was entitled to hear evidence of Aiello's income and to draw reasonable inferences based upon the evidence in this narcotics-related conspiracy case. *See United States v. Roman*, 870 F.2d 65, 75 (2d Cir.), *cert. denied*, — U.S. —, 109 S.Ct. 3164, 104 L.Ed.2d 1026 (1989) (evidence of defendant's wealth and other circumstantial evidence was admissible in continuing criminal enterprise case); *United States v. Losada*, 674 F.2d 167, 173 (2d Cir.), *cert. denied*, 457 U.S. 1125, 102 S.Ct. 2945, 73 L.Ed.2d 1341 (1982) (evidence that defendant received large sums of money and had expensive spending habits was admissible in a continuing criminal enterprise case involving the cocaine trade). No degree of maneuvering the tax counts by Winograd would have been able to preclude the evidence.

■ Fifth, Aiello finally argues that Winograd's decision not to seek a special verdict demonstrates a lapse in representation. This contention is totally without

merit. Although Winograd later changed his mind after jury deliberations had started, the choice not to seek a special verdict form was a calculated strategy. In a continuing criminal enterprise case such as this, a special verdict form may tend to concisely organize the nature of the enterprise for the jury. The use of a special verdict remains discretionary in Section 848 cases. *See Roman,* 870 F.2d at 73 (upholding conviction where defendant elected not to request a special verdict even though trial court would have been well advised to submit interrogatories to the jury). Simply because Aiello is in hindsight dissatisfied with the jury verdict in no way implies a lapse of representation.

In sum, Aiello has failed to satisfy either part of the *Strickland* standard: there can be no doubt that Winograd's representation did not fall below an "objective standard of reasonableness"; and, it certainly cannot be said that "but for [Winograd's] unprofessional errors" Aiello would not have been convicted. Rather than supporting Aiello's claim of serious inadequacy, the record here reveals anything but a less than competent defense. The sixth amendment does not entitle a defendant to perfection but to basic fairness.

### C. *Dismissal Without a Full Hearing*

■ Finally, we consider Aiello's argument that the district court committed reversible error by failing to hold an evidentiary hearing. Pursuant to Section 2255, a district court ought not ordinarily dismiss a petition for habeas corpus without a hearing "[u]nless the motion and the files and records of the case conclusively show that the petitioner is entitled to no relief." 28 U.S.C. § 2255 (1982). Generally, "we look with disfavor on summary rejection of a habeas petition." *Aiello I,* 814 F.2d at 113 (citing *Dalli v. United States,* 491 F.2d 758, 760 (2d Cir.1974)). Although it would have been preferable for the district court to hold a hearing, we conclude that, based on the particular facts of this case, the absence of such a hearing does not constitute grounds for reversal.

Where a petition omits "meritorious allegations" that can be established by "competent evidence," "it would go too far to

say that it was error for the district court to have failed to conduct a full evidentiary hearing." *Aiello I,* 814 F.2d at 113. *See also Newfield v. United States,* 565 F.2d 203, 207 (2d Cir.1977) (unless supported by a sufficient affidavit, the decision whether to hold an evidentiary hearing on a Section 2255 motion is left to the discretion of the district court.) Having presided over both of Aiello's trials, Judge Duffy was intimately familiar with the detailed factual record. Based on this familiarity, he considered Aiello's habeas petition, and determined that its allegations were patently meritless. After our independent review of the record on this appeal, we agree with Judge Duffy's determination. It is plain upon the record that Winograd neither experienced an actual conflict of interest nor was adversely affected in his representation of Aiello. Given the lack of any truly meritorious allegation in Aiello's petition and the overwhelming evidence of his guilt, the district court did not commit reversible error when it dismissed the habeas claim without an evidentiary hearing.

### CONCLUSION

For all the reasons stated above, the order of the district court denying petitioner's motion to set aside his conviction pursuant to 28 U.S.C. § 2255 is affirmed.