Perry BELLAMY, Petitioner–Appellant,

v.

William COGDELL, Warden Brooklyn House of Detention, Respondent–Appellee.

No. 438, Docket 91–2327.

United States Court of Appeals, Second Circuit.

Argued Oct. 30, 1991.

Decided Dec. 18, 1991.

Michael A. Ciaffa, Mineola, N.Y. (Meyer, Suozzi English & Klein, P.C., of counsel), for petitioner-appellant.

Seymour Roth, Kew Gardens, N.Y., Asst. Dist. Atty. for Queens County (Richard A. Brown, Dist. Atty. for Queens County, of counsel), for respondent-appellee.

Before OAKES, Chief Judge, FEINBERG and ALTIMARI, Circuit Judges.

FEINBERG, Circuit Judge:

Petitioner Perry Bellamy appeals from a decision and order of the United States District Court for the Eastern District of New York, Reena Raggi, J., denying his application for a writ of habeas corpus and granting judgment to respondent William Cogdell, Warden of the Brooklyn House of Detention. In his application for the writ, Bellamy claimed ineffective assistance of trial counsel and denial of due process. To

this he added a claim that he was denied a full and fair opportunity to litigate his attorney's competence in his state-court hearing. We hold that on the unusual facts before us and under our precedents, this is one of those rare instances where denial of effective counsel must be presumed as a matter of law, without any showing of prejudice. Therefore, we reverse the denial of the writ of habeas corpus and remand with instructions.

### Background

In January 1987, Perry Bellamy went on trial in New York Supreme Court, Queens County, for the murder of New York State Parole Officer Brian Rooney. One year earlier, Mr. Bellamy's mother had retained Sidney J. Guran to defend her son. At that time, Guran had been retired for over a year and, as later became evident, was ill.

As the trial date approached, Guran's health declined. In September 1986, his doctor, Richard P. Cohen, M.D., undertook an extensive evaluation of a neurological problem from which Guran was suffering, a condition known as polyneuropathy and "characterized by peripheral motor weakness, unsteadiness on his feet and, at times, an inability to concentrate." In an apparently unrelated development, on October 20, 1986, the chief counsel to the Departmental Disciplinary Committee for the First Judicial Department (the Committee) filed charges of professional misconduct involving conversion of funds against Guran. Less than a month later, the Committee received a letter from Guran's attorney, Richard L. Baltimore, stating that Guran "is not mentally capable of preparing for the hearing" on the charges and requesting an adjournment of the hearing on that basis. Baltimore added that in his telephone conversations with Guran, he perceived "a certain amount of disorientation."

Enclosed with Baltimore's letter was a letter from Dr. Cohen, Guran's physician, dated October 29, 1986, indicating that evaluation and treatment of Guran's current medical problem would take "at least three to six months" and that "Mr. Guran will be effectively incapacitated during that

time." Based on these statements in support of Guran's request for an adjournment, on November 21, 1986 the Committee petitioned the Appellate Division, First Department, for Guran's indefinite suspension, and simultaneously moved for an order "suspending respondent [Guran] from the practice of law, effective *immediately* ...." (emphasis added). The return date of the motion was December 23, 1986.

Guran answered this motion in an affidavit sworn to on December 12, 1986, in which he admitted that the factual allegations of the petition "are not in dispute." These included allegations of physical and mental incapacity. The affidavit stated that he had "not taken any new work" since his 70th birthday in 1984 other than Bellamy's case, which was set for trial early in the following month. He pointed out that the trial could not be delayed, that he was familiar with the case, that Bellamy's mother had already paid him and that Bellamy "strictly trusts only me." For these reasons, Guran requested that he not be suspended and stated that "I, of course, will not attempt to try this case by myself. I will have a competent attorney, but I must be present to assist him." He also indicated that he would not take any other cases.

Guran subsequently wrote to the trial judge, John T. Gallagher, J., advising him generally of the disciplinary charges against Guran, his explanation of his actions in the matters charged, his request for an adjournment of the hearing on those charges, the Committee's motion to suspend him immediately and his intentions to enlist the help of another attorney at Bellamy's trial.

It is undisputed that at the time of trial, Bellamy knew nothing about the charges against his attorney, his attorney's admission of incapacity or his attorney's representation that he would not attempt to try the case alone. Bellamy has sworn in an affidavit that he would not have allowed Guran to represent him at trial had he known of the facts stated above, and that contention is not disputed. Also undisputed is the fact that Guran, alone, represented Bellamy during the trial after making unsuccessful attempts to have another attorney assist him. The trial commenced with jury selection on January 6, 1987 and ended with a jury verdict of murder in the second degree and criminal possession of a weapon on January 24, 1987.

Approximately two months after the jury verdict, on March 26, 1987, the Appellate Division, First Department, issued a unanimous order "to protect the public," suspending Guran indefinitely as an attorney on the ground that, as Guran himself had implicitly conceded, "he is, at this time, incapable of practicing law." At a sentencing proceeding in April 1987, after Bellamy had learned of Guran's suspension, Bellamy protested that his rights were "being violated .... Mr. Guran was not a fit lawyer to handle and represent me properly because of his medical health and other reasons." Bellamy added "[u]nder the Fourteenth Amendment, I have a right to counsel and I have a right to a fair trial .... [b]ut I did not have that." He was subsequently sentenced to 15 years to life in prison for the murder conviction and five to 15 years in prison for the criminal weapon possession conviction.

Represented by pro bono counsel, Bellamy moved in June 1987, pursuant to CPL § 440, for an order setting aside his conviction on the grounds that he was not afforded effective assistance of counsel and was denied due process of law. On July 30, 1987, Justice Gallagher denied the motion summarily after oral argument. However, after Bellamy's request for reconsideration, the judge vacated his denial and set the matter down for a hearing. Before the hearing was held, Justice Gallagher denied Bellamy's motion to compel Guran's testimony at the hearing.

The hearing took place on three separate days in 1988; several witnesses testified, including Guran's doctor. Thereafter, in a memorandum decision dated January 31, 1989, Justice Gallagher denied Bellamy's motion to vacate his conviction. Justice Gallagher concluded that Guran was "mentally and physically capable to try the defendant's case and did so in a competent

manner." The judge also held that it had not been necessary at trial either to inquire as to whether Bellamy "was aware his attorney was facing suspension on grounds of incapacity" or to require Guran to obtain assistance in trying the case. Justice Gallagher finally concluded that Bellamy was not denied effective representation during the suppression hearing.

Bellamy duly sought permission to appeal the denial of his CPL § 440 motion; in May 1989, the Appellate Division denied leave to appeal.

In December 1990, Bellamy filed his petition in the Eastern District for a writ of habeas corpus. He raised in the district court the same issues presented earlier in state court in the CPL § 440 motion, and added that he had not had a full and fair opportunity to develop his claims because Justice Gallagher had denied his motion to compel Guran's testimony at the earlier hearing.

After submission of legal memoranda, the district court denied the petition on the merits in June 1991 without an evidentiary hearing. In a reasoned and thorough opinion, Judge Raggi ruled that Bellamy had exhausted his state court remedies, that Bellamy had not been denied effective assistance of counsel, under a per se rule or under the standard set forth in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and that the state trial judge's failure to take action or make inquiry after learning of the pending motion to suspend Guran did not deprive Bellamy of due process. This appeal followed.

### Discussion

■ We turn directly to consideration of the merits, since the district court was justified in holding that state remedies have been exhausted, and appellee Warden makes no claim to the contrary.

■ Under most circumstances, when a criminal defendant raises a claim of ineffective assistance of counsel, the defendant must demonstrate both unreasonable representation by the attorney and sufficient prejudice to render the result of the trial unreliable. *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064. In a small class of cases, however, we do not apply *Strickland's* two-pronged test of ineffective assistance but instead presume that there has been prejudice. The Supreme Court in *Strickland* spoke of such cases when it asserted that "[i]n certain Sixth Amendment contexts, prejudice is presumed. Actual or constructive denial of the assistance of counsel altogether is legally presumed to result in prejudice." 466 U.S. at 692, 104 S.Ct. at 2067.

Both before and since *Strickland,* we have held that where a defendant was represented by an attorney who, unbeknown to the defendant, was not licensed to practice law, that defendant has been denied the constitutional right to counsel. In *Solina v. United States,* 709 F.2d 160 (2d Cir. 1983), in a typically thorough opinion by Judge Friendly, we so held even where the representative was trained in law, where the representative apparently furnished reasonably competent representation and where the evidence against the defendant was so overwhelming that he would almost certainly have been convicted regardless of who had represented him. We held that a defendant's Sixth Amendment right to counsel is violated where, without the defendant's knowledge, "his representative was not authorized to practice law in any state, and the lack of such authorization stemmed from failure to seek it or from its denial for a reason going to legal ability, such as failure to pass a bar examination, or want of moral character ...." 709 F.2d at 167. We there concluded that "[a]pplication of a *per se* rule appears to us to be required in a case like this by the teachings of the Supreme Court ...." 709 F.2d at 168. We were careful to point out, however, that we did not intimate that simply any technical defect in the licensed status of a defendant's representative would amount to a violation of the Sixth Amendment, 709 F.2d at 167, and we gave several examples.

Seven years later, in *United States v. Novak,* 903 F.2d 883 (2d Cir.1990), we again thoroughly canvassed the subject. The attorney in that case (Joel B. Stein-

berg), although licensed to practice law during the defendant's trial, had fraudulently obtained his license. In an opinion by Judge Kearse, we reaffirmed the holding in *Solina* and held that the representation at trial constituted per se ineffective assistance of counsel, lack of prejudice notwithstanding. Our reasoning again was that "mere technical defects need not result in *per se* Sixth Amendment violations" but that "serious substantive defects" do. 903 F.2d at 888. We pointed out that in *Solina* there had been "a demonstrated inability to meet the threshold criteria of competence in the law (as in Solina's counsel's failure of the bar examination) ...." Id. Similarly, in *Novak,* "[t]he defect in Steinberg's licensure was not simply technical but was instead serious and substantive. At the time of his admission to the bar, Steinberg had not met the State's normal substantive requirements for admission to the New York State Bar. His competence to practice law had never been tested, and he was not entitled to bypass such testing." 903 F.2d at 890.

In the case before us, the attorney whose assistance is at issue, Mr. Guran, has been suspended indefinitely from the practice of law. Disciplinary proceedings started in October 1986, and a hearing on those charges was noticed for December 11, 1986. In November, Guran's attorney sent a letter to the Departmental Disciplinary Committee, stating that Guran was "not mentally capable of preparing for the hearing" and requesting an adjournment on that basis. The Committee quickly moved for an order *immediately* suspending Guran from practicing law and noticed a return date prior to the date when Bellamy's trial would begin. In response to that motion, in an affidavit sworn to only about three weeks before the scheduled commencement of the trial, Guran admitted that the factual allegations of incapacity were not in dispute and swore to the Appellate Division that he would "of course" not try Bellamy's case alone. Guran substantially repeated this promise to Justice Gallagher in a letter. When Guran was finally suspended after the trial, the ground for suspension was that by his own

implicit concession, "he is, at this time, incapable of practicing law." We think it is clear that but for the promise to the Appellate Division to secure the help of a competent attorney—a promise that Guran did not or could not keep and that he did not convey to the trial judge—Guran's suspension would almost certainly have taken place prior to Bellamy's trial. It was only by a representation that was not fulfilled that the attorney in this case remained licensed for the duration of the trial.

We have also applied a per se rule in *United States v. Cancilla,* 725 F.2d 867 (2d Cir.1984). In that case, the attorney at issue had, unknown to the defendant, participated in criminal conduct related to the conduct for which defendant was convicted. Despite the lack of proof of prejudice to the defendant, we held there that such participation created a conflict of interest that denied defendant his right to counsel at trial. We agree with respondent Warden that the present case does not raise a similar conflict of interest problem. However, a per se denial of effective assistance does not arise only where there is a conflict of interest between an attorney and client. On the contrary, the reason we presume prejudice in such instances is that the conflict may prevent the attorney from vigorously representing the client, for fear of being discovered. *Cancilla,* 725 F.2d at 870. We have no less—and perhaps more—reason to fear inadequate representation where the attorney is, as Guran has conceded himself to be, mentally incapable of preparing for a simple disciplinary hearing than we would be if there were a conflict of interest.

The Warden claims that this case resembles *Waterhouse v. Rodriguez,* 848 F.2d 375 (2d Cir.1988), in which a criminal defense attorney was undergoing disciplinary proceedings while representing his client at a hearing to determine whether his client's confession was voluntary. We held that the pendency of the disciplinary proceedings, even though they ended in disbarment, did not alone trigger the presumption of prejudice. The analogy between *Waterhouse* and the present case is flawed.

In *Waterhouse*, the attorney was disbarred for misappropriating client funds and for failing to represent clients after accepting fees. 848 F.2d at 378. Neither of these bases of disbarment called into question the attorney's competence to practice law at the time he was representing Waterhouse. They were solely reflections of his honesty and his ethical entitlement to remain a member of the bar. As we stated there, "the charges underlying his disbarment were unrelated to his representation of Waterhouse ...." 848 F.2d at 383. It was therefore not considered pertinent to the defendant's representation at the confession hearing that his attorney was disbarred.

The Warden also relies on *United States v. Aiello*, 900 F.2d 528 (2d Cir.1990). In that case, the attorney representing the criminal defendant was under investigation by the Organized Crime Strike Force for the Eastern District of New York before and during the proceedings against the defendant. But as in *Waterhouse*, "[the attorney's] purported crimes were totally unrelated to the ... crimes for which [the defendant] was being tried." 900 F.2d at 531. There was similarly no evidence that the attorney was incompetent to practice law.

In our case, in contrast to both *Waterhouse* and *Aiello*, the defect which led to Guran's suspension was "a serious substantive flaw, [such as] ... a demonstrated inability to meet the threshold criteria of competence in the law." *Novak*, 903 F.2d at 888. Had Guran been suspended solely for the financial charges originally brought against him, on the authority of *Waterhouse* we might well have upheld Bellamy's conviction. But when an attorney is admittedly incapable of preparing for a hearing to be held a week or two before a criminal trial, when that incapacity is the ground for suspension from practice shortly after the trial, when that suspension would almost certainly have occurred prior to the criminal trial but for an unfulfilled promise to be assisted by competent counsel during the trial, and when the attorney's client is ignorant of all of this, we feel obligated by our cases to hold on such unusual facts that the client has been denied the effective assistance of counsel guaranteed a defendant by the Constitution.

Because we have found that there was per se ineffective assistance of counsel, we do not reach the other claims raised by appellant. The judgment of the district court is reversed and the case is remanded for a grant of the writ of habeas corpus under appropriate conditions.

ALTIMARI, Circuit Judge, dissenting:

The majority finds that the facts of this case constitute a *per se* violation of the Sixth Amendment right to counsel. This Circuit has found such *per se* violations in only two limited circumstances: where, unknown to the defendant, his or her counsel was, at the time of trial (1) not duly licensed to practice law because of a failure ever to meet the substantive requirements for the practice of law, *see United States v. Novak*, 903 F.2d 883, 890 (2d Cir.1990) (counsel fraudulently procured license by misrepresenting that he was entitled to a dispensation from the bar examination); *Solina v. United States*, 709 F.2d 160, 167 (2d Cir.1983) (counsel repeatedly failed the bar exam) or (2) implicated in the defendant's crimes. *See United States v. Cancilla*, 725 F.2d 867, 870 (2d Cir.1984). Even on these occasions, we have applied the *per se* rule "without enthusiam." *United States v. Aiello*, 900 F.2d 528, 531 (2d Cir.1990).

The present case simply does not fall within the facts or underlying rationale of this narrow category of cases. Guran *was* duly licensed at the time of trial and I cannot subscribe to the majority's attempt to recast reality and treat him as if he were not. Similarly, there is no allegation that Guran was involved in the misdeeds of Bellamy. In addition, the facts of this case, fully developed, demonstrate that at the time of trial, Guran was completely mentally competent to defend Bellamy.

Moreover, the majority implicitly concedes that Bellamy cannot establish that Guran's representation was ineffective un-

der the standard set forth in *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Indeed, the record reflects that Guran called numerous witnesses (all well prepared to testify) and mounted a vigorous and cogent defense, highlighted by the fact that despite the overwhelming evidence against Bellamy, the jury deliberated for five days before convicting him.

Because Guran provided Bellamy constitutionally effective representation, and because the majority's application of the *per se* rule to the facts of this case is an unwarranted departure from prior decisions of this Court, I respectfully dissent.

As the majority indicates, the underlying action in this case stemmed from petitioner Perry Bellamy's participation in the brutal murder of State Parole Officer Brian Rooney. Lorenzo "Fat Cat" Nichols, a notorious Queens drug dealer, ordered Rooney's murder from Nichols' jail cell. This "hit" was a revenge killing for Rooney's role in placing Nichols behind bars. Over one year prior to the start of Bellamy's trial in January 1987 for his role in Rooney's murder, Bellamy's mother contacted Attorney Sidney Guran to represent Bellamy. Although he was retired and living in Florida, Guran had represented Bellamy several times in the past and agreed to represent him again. At that time, Guran was seventy-one years old and had been a successful member of the bar for almost fifty years.

In the months preceding and during Bellamy's trial, Guran was the subject of disciplinary proceedings in the First Department. In October 1986, the Departmental Disciplinary Committee alleged that Guran had converted client funds in 1976 and had negligently handled a real estate transaction in 1977. The Committee scheduled a hearing on the charges for December 11, 1986. On November 10, 1986, Guran's attorney, Richard L. Baltimore, Jr., requested that the hearing be adjourned because more time was needed to compile documents for the hearing and because Guran was [then] "not mentally capable of preparing for the hearing." Baltimore based his evaluation of Guran's capacity on phone conversations with Guran in which he found "a certain amount of disorientation" and on a letter, dated October 29, 1986, from Guran's physician, Dr. Richard P. Cohen.

According to Dr. Cohen, Guran suffered from a variety of physiological ailments, including a recently diagnosed polyneuropathy, a condition "characterized by peripheral motor weakness [and] unsteadiness" on one's feet. Dr. Cohen had been treating Guran for that condition for the preceding six weeks. During that time, as a result of the "physical and emotional stress" associated with Guran's recently discovered illness and of certain medications, Guran had been "virtually incapacitated." Dr. Cohen also noted that as a result of that condition, Guran "at times" had "an inability to concentrate." The prognosis for Guran's newly discovered condition was uncertain at that time, but Dr. Cohen "anticipated" that evaluation and treatment of the polyneuropathy would take three to six months, and that Guran would be "effectively incapacitated during that time."

Based on these communications, and on the underlying charges, the Disciplinary Committee petitioned the First Department on November 21, 1986 for Guran's immediate, indefinite, suspension from the practice of law. In response, Guran submitted an affidavit to the First Department on December 12, 1986, in which he admitted his medical problems, but stated that a suspension, with its attendant stigma, was unnecessary. According to Guran, he had been essentially retired since 1984, having taken on no new work except for Bellamy's case. Because of his prior representation of Bellamy and because of his familiarity with the case, Guran requested that he be permitted to represent Bellamy, stating:

> I, of course, will not attempt to try this case by myself. I will have a competent attorney, but I must be present to assist him. Bellamy relies on and trusts only me and his mother has paid me. It would be a complete disservice to this defendant and jeopardize his right to a fair trial if I were not permitted to assist in his trial and defense.

Neither the Disciplinary Committee nor the First Department responded to Guran's affidavit.

On December 11, 1986, Guran also advised the trial judge, John T. Gallagher, in an *ex parte* submission, about the pending disciplinary charges and the motion to suspend him pending his recovery from health problems. Among other things, Guran informed Judge Gallagher:

> You might remember that I had a Dr. [sic] appointment ... at N.Y. Hospital at which time a tentative diagnosis of [a form of polio commonly known as Lou Gehrig's Disease] was made. Needing time to prepare [for the disciplinary hearing scheduled for December 11, 1986], feeling miserable, [and] discouraged, I returned home and, through my lawyer, sent a copy of my medical statement to the Committee. Immediately they moved to suspend me pending my recovery....
>
> *I am feeling better* and have secured the services of Marvin D. Skeledsky, Esq. [to assist me with the trial]. (emphasis added).

Jury selection in Bellamy's trial began on January 6, 1987. Because Skeledsky was unexpectedly occupied with another case at that time, Guran represented Bellamy alone. At no time was Bellamy informed of Guran's disciplinary or health problems. On January 24, 1987, after five days of deliberations, the jury convicted Bellamy of second degree murder and second degree criminal possession of a weapon.

On March 26, 1987, over two months after Bellamy's conviction, the First Department—without a hearing—suspended Guran from the further practice of law. The First Department chose to suspend Guran based on his December 1986 representation that he was then not mentally capable of preparing for a disciplinary hearing. The First Department determined that Guran's representation, "implicitly concedes that he is, at this time, incapable of practicing law."

Having learned that Guran had been suspended, Bellamy moved in June 1987, pursuant to N.Y.Crim.Proc.L. § 440 (McKinney 1983), to vacate his judgment of conviction based, among other things, on Guran's alleged incapacity to serve as counsel and his subsequent suspension on those grounds. Alternatively, Bellamy requested that a hearing be held to determine Guran's competency. Judge Gallagher denied Bellamy's § 440 motion and his request for a hearing, observing in pertinent part that:

> He did an excellent job in trying that case. I don't know of any mistakes that he made in trying the case.
>
> Further, with respect to the Appellate Division, Mr. Guran came to me before he started this case. He told me that he had a matter pending before the Appellate Division. This was with the First Department. *I called the First Department and I told them that Mr. Guran was in my court and he had a matter to try here and I asked if it was appropriate for me to permit him to try this case, and they told me that it was permissible for me to do that and that's exactly what I did* .... so there's no impropriety with respect to Mr. Guran's conduct or how he tried the case.... (emphasis added).

Upon Bellamy's motion for reconsideration, the court ordered a hearing to determine the competency of trial counsel. Neither Guran nor Bellamy testified at the § 440 hearing. The principal witness at the hearing was Dr. Cohen. Dr. Cohen first testified about his authorship of the October 29, 1986 letter, written at Guran's request, that was sent to the First Department in support of Guran's efforts to secure an adjournment of the disciplinary hearing. With regard to the October letter, Dr. Cohen testified essentially that:

> [H]is opinion in the October letter that Guran was "virtually incapacitated" related primarily to his patient's inability to travel frequently between his home in Florida and New York, as he understood would be required to participate in the disciplinary hearing. As the doctor explained, Guran's ailments gave him a poor sense of balance and made him susceptible to falls. Frequent travel heightened this risk. ... He explained that the

inability to concentrate noted in his letter related primarily to difficulty he perceived Guran would have focusing on other matters if he were in a situation where it was difficult for him to keep his balance.

*Bellamy v. Cogdell,* No. 90–4225 (E.D.N.Y. June 28, 1991) (found at Joint Appendix, pp. 566–67). Significantly, based on a follow-up examination conducted on January 6, 1987—the day Bellamy's trial commenced and over two months after the October letter was written—Dr. Cohen further testified that he had placed no restrictions on Guran's practice of law and, more importantly, stated unequivocally that Guran's physical problems had no effect on his mental capacities, *i.e.,* there was nothing wrong mentally with Guran at the time of Bellamy's trial. After the evidentiary hearing, the trial court again denied Bellamy's motion to vacate his conviction, concluding that *at the time of trial,* [Guran] "was mentally and physically capable to try the defendant's case and did so in a competent manner." *People v. Bellamy,* Ind. No. 5382–85 (Queens Co.Sup.Ct. Jan. 31, 1989).

After exhausting state court remedies, Bellamy filed a petition for a writ of habeas corpus in the United States District Court for the Eastern District of New York, claiming, among other things, that he was denied effective assistance of counsel under the *per se* rule. The district court, in a well-reasoned opinion, rejected this claim, holding that the *per se* rule did not apply under the facts of this case. After thoroughly reviewing the record, the district court, agreeing with the trial court, found that there was "no evidence ... of any mental infirmity" of Guran at the time of trial that impeded his ability to present a defense, and that Guran in fact conducted a vigorous defense. I agree with the district court that the facts of this case are simply outside the ambit of this Court's *per se* Sixth Amendment jurisprudence.

As discussed above, we have applied the *per se* rule in a limited number of cases, namely when, unknown to the defendant, his or her attorney is not duly licensed, *see Novak,* 903 F.2d at 890; *Solina,* 709 F.2d

at 167 or is engaged in the defendant's misdeeds. *Cancilla,* 725 F.2d at 870. Further, as the district court observed, we have advanced two rationales for applying the *per se* rule. The first is "jurisdictional" and applies in cases where the attorney is not duly licensed. It stems from the Supreme Court's decision in *Johnson v. Zerbst,* 304 U.S. 458, 468, 58 S.Ct. 1019, 1024, 82 L.Ed. 1461 (1948), that the failure to provide a criminal defendant with counsel created "a jurisdictional bar to a valid conviction." *See Solina,* 709 F.2d at 168–69 (discerning no meaningful distinction between total absence of representation and representation by unlicensed counsel). The second rationale is based on notions of conflict of interest, and applies in cases both where the lawyer is not duly licensed, *see Novak,* 903 F.2d at 890; *Solina,* 709 F.2d at 164 and where the lawyer is implicated in the crimes of his client. *See Cancilla,* 725 F.2d at 870. Under these circumstances, the defense is necessarily compromised because the advocate "cannot be wholly free from fear of what might happen if a vigorous defense should lead the prosecutor or the trial judge to inquire into his [or her] background and discover his" or her own wrongdoing. *Solina,* 709 F.2d at 164.

Under either rationale, it is plain that for a defendant to prevail on a *per se* claim, the defendant must show that his or her attorney had an actual substantive defect in licensure or an actual conflict of interest that existed *at the time of trial. See, e.g., Novak,* 903 F.2d at 890; *Solina,* 709 F.2d at 164; *Cancilla,* 725 F.2d at 870; *see also United States v. Aiello,* 900 F.2d 528, 531–32 (2d Cir.1990) ("theoretical or merely speculative conflict never invokes the *per se* rule").

In light of these principles, the majority's application of the *per se* rule to the facts of this case is wholly unwarranted. Neither rationale for our *per se* cases applies. Guran was duly licensed and admitted to the bar at the time of trial, thereby precluding application of the "jurisdictional" rationale. The mere pendancy of disciplinary charges during Bellamy's trial is an insufficient ba-

sis to treat Guran as if he were not licensed at that time. *See Waterhouse v. Rodriguez,* 848 F.2d 375, 383 (2d Cir.1988). Moreover, Guran clearly had no conflict of interest at the time of trial that would have prevented vigorous advocacy on Bellamy's behalf.

The majority nonetheless advances two related grounds for applying the *per se* rule. First, analogizing this case to the fraudulently procured license in *Novak,* the majority finds that but for Guran's unfulfilled promise to have co-counsel at Bellamy's trial, Guran "almost certainly" would have been suspended before the trial. Second, the majority contends that Guran's statements of mental incapacity made in connection with his efforts to postpone his disciplinary hearing, which ultimately were relied on by the First Department to suspend Guran in late March 1987, are "perhaps more reason to fear inadequate representation" than if he had a conflict of interest. I do not believe that either ground justifies extending the *per se* rule to this case.

The majority's reliance on *Novak* is misplaced. Unlike the "attorney" in *Novak,* or the "attorney" in *Solina* for that matter, Guran was, as discussed above, fully licensed and had been duly admitted to the New York bar for almost fifty years at the time of Bellamy's trial. Also, whereas the attorney in *Novak* certainly would not have been licensed and allowed to practice without his fraudulent misrepresentation, the effect on the First Department of Guran's promise to secure co-counsel is far less clear. As the district court observed, "[s]ince there is no 'conditional admission' to practice law in New York, this court cannot speculate ... that [Guran] would have been suspended but for his representation that he would secure the assistance of other counsel." This is particularly so given the First Department's failure to respond to Guran's affidavit or to take action against him until well after Bellamy's trial. There is simply no justification to treat Guran as if he were not admitted and fully licensed to practice law at the time of Bellamy's trial.

In addition, Guran's representation to the First Department regarding the use of co-counsel does not approach the type of "institutional" fraud on the court present *Novak.* Although Guran apparently did not tell the trial court of his promise to secure the services of co-counsel, Guran made no attempt to conceal from the court his pending disciplinary hearing or his possible suspension for health reasons. To the contrary, Guran fully informed the court of his predicament, including his planned collaboration with Attorney Skeledsky. Indeed, the trial court contacted the First Department to determine whether Guran could represent Bellamy. Under these circumstances, it cannot be said that Guran's conduct approached the egregious deceptive behavior present in *Novak* or *Solina,* or that Guran, like the "attorneys" in *Novak* and *Solina,* was precluded from providing a vigorous defense because he had something to hide. *See Aiello,* 900 F.2d at 531–32; *Waterhouse,* 848 F.2d at 383.

Slightly more troublesome are the statements contained in Dr. Cohen's October 29 letter and Guran's own statements in his December 12 affidavit regarding his inability to prepare for his disciplinary hearing, which formed the basis of Guran's suspension in late March 1987. However, that the First Department—without conducting a hearing to determine Guran's competence—ultimately suspended Guran based on statements made over three months earlier as to his then-existing state of health, is simply an insufficient basis upon which to conclude that Guran was not competent to defend Bellamy at the time of trial.

Indeed, the evidence adduced at the § 440 hearing through the testimony of Dr. Cohen—based on an examination Cohen conducted on Guran the day Bellamy's trial commenced—clearly demonstrated that Guran had no mental incapacity at the time of trial. This medical evidence was buttressed by the trial judge's own favorable observations regarding Guran's mental acuity and physical condition during the trial. Given this evidence, the district court agreed with the trial court's finding that at the time of trial, the relevant moment of inquiry, Bellamy was certainly

competent to present a spirited defense. This factual finding—the import of which is wholly ignored by the majority—is amply supported by the record, is therefore not "clearly erroneous," *see* 28 U.S.C. § 2254(d), and precludes application of the *per se* rule in this case.

In sum, when a lawyer is duly licensed at the time of trial, when disciplinary proceedings against the lawyer have not resulted in an adverse ruling, and when the medical evidence and observations of the trial judge establish that at the time of trial, the lawyer was mentally competent to represent the defendant, application of the *per se* rule is unwarranted. In finding a *per se* violation on this record, the majority unjustifiably opens the gates to *per se* Sixth Amendment challenges whenever a defendant can show that before and perhaps sometime after the defendant's trial, his lawyer had an illness that the defendant contends—contrary to the evidence—rendered the attorney incompetent at the time of trial.

Accordingly, I would affirm the district court's denial of Bellamy's petition for a writ of habeas corpus.