### UNITED STATES of America

v.

**John GAMBINO, a/k/a "Giovanni," Joseph Gambino, a/k/a "Joe," a/k/a "Giuseppe," Lorenzo Mannino, a/k/a "Lore," and Matteo Romano, Defendants.**

**No. (9S) 88 Cr. 919 (PKL).**

United States District Court,
S.D. New York.

Nov. 24, 1993.

Mary Jo White, U.S. Atty., S.D.N.Y., New York City (Patrick J. Fitzgerald, Richard B. Zabel, of Counsel), for U.S.

Santangelo, Santangelo & Cohen, New York City (George L. Santangelo, of Counsel), for John Gambino.

Edward S. Panzer (Edward S. Panzer, of Counsel), Bruce Cutler (Bruce Cutler, of Counsel), New York City, for Joseph Gambino.

Charles Carnesi, Brooklyn, NY, of Counsel, for Lorenzo Mannino.

Howard R. Leader, New York City, for Matteo Romano.

## ORDER AND OPINION

LEISURE, District Judge.

The Government has moved this Court for an order disqualifying Bruce Cutler, Esq., from representing defendant Joseph Gambino at the retrial of this criminal action. The Government argues that Cutler must be disqualified because an ongoing investigation of Cutler for alleged obstruction of justice and tax evasion, creates an actual conflict of interest constituting *per se* ineffective assistance of counsel. Alternatively, the Government argues that if this Court does not find a *per se* violation of the Sixth Amendment, the Court should nonetheless exercise its broad discretion, and disqualify Mr. Cutler based on what the Government terms "the aggregate of the serious conflicts of interest." Government's Memorandum in Support of its Motion to Disqualify ("Government's Memorandum") at 23. The Defendants oppose this motion.

On November 4, 1993 this Court issued an Order denying the Government's motion, and indicating this opinion would follow. The reasons for denying the Government's motion are more completely set forth below; and, accordingly, the Government's motion hereby is denied.

### Background

#### I.   The Indictment

The defendants, JOSEPH GAMBINO, JOHN GAMBINO, LORENZO MANNINO, and MATTEO ROMANO are charged in the ninth superseding indictment, with six criminal counts. Familiarity with the 36 page superseding indictment will be assumed, but it is summarized briefly for purposes of this opinion.

The Defendants are charged in count one with conspiring to violate the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), by conducting and participating, directly and indirectly in the conduct of the affairs of an enterprise, through a pattern of racketeering activity.

The defendants are charged in count two with violating the RICO statute by unlawfully, willfully, and knowingly conducting and participating, directly and indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity.

The enterprise charged in the indictment consists of a group of individuals associated in fact to conduct, participate in, commit and attempt to commit acts of racketeering as defined by Section 1961(1) of Title 18, United States Code. These alleged acts of racketeering involved dealing in narcotics and other dangerous drugs, murder, extortion, loan-sharking, bribery, and illegal gambling, which acts are chargeable under state law and punishable by imprisonment for more than one year, and offenses involving felonious manufacturing, importing, receiving, concealing, buying, selling and otherwise dealing in narcotics and other dangerous drugs, including those offenses set forth in count three of the indictment.

Count three charges defendants Joseph Gambino, John Gambino, Lorenzo Mannino, and other co-conspirators with conspiracy to violate the federal narcotics laws. Counts four and five charge defendants John Gambino, Joseph Gambino, Lorenzo Mannino, and other co-conspirators with the murder of, and conspiracy to murder Franceso Oliveri. Count six charged defendants John Gambino and Joseph Gambino with bail jumping, a charge for which they were convicted in this Court based on a jury verdict, following a trial, completed on June 4, 1993. The jury was unable to reach a verdict on the remaining counts, and this Court declared a mistrial as to those counts.[1]

### II. Cutler's Involvement

Bruce Cutler, Esq. ("Cutler"), first appeared as counsel for Joseph Gambino in this case on February 16, 1989. Edward Panzer, Esq. ("Panzer"), who also represents Joseph Gambino, first appeared in this case on December 12, 1989. During the aforementioned trial, Cutler functioned as lead trial counsel for Joseph Gambino, and played an integral role in all aspects of Joseph Gambino's defense. Cutler gave opening and closing arguments on behalf of Joseph Gambino, conducted cross examination of key Government witnesses, including approximately two days of cross examination and re-cross examination of Government witness Salvatore Gravano, and participated in the decision to call witnesses in Joseph Gambino's defense. Trial Transcript of first trial, *United States v. Gambino et al.,* 88 Cr. 919 (PKL) ("Trial Transcript"), at 106–131, 4400–4620, 6597–6605, 6265–6329. Both of Joseph Gambino's attorneys, Cutler and Panzer, appeared at the pretrial conferences for the aforementioned trial and again at the pretrial conferences for the retrial of this case, presently scheduled to commence on December 6, 1993.

Prior to this trial, Cutler has represented John Gotti in a number of matters, including *United States v. Gotti,* 85 Cr. 178 (EHN) (E.D.N.Y.) (racketeering case); *People v. Gotti,* No. 358/89 (N.Y.Sup.Ct.1989) (murder trial); and *United States v. Local 1804–1, International Longshoremen's Association,* 90 Civ. 963 (LBS) (S.D.N.Y.1990). Cutler has also represented a number of persons whom the Government asserts are associated with John Gotti and the Gambino organized crime family.[2]

On August 1, 1991, Hon. Judge Leo I. Glasser, United States District Judge in the Eastern District of New York ("Eastern District") found that Bruce Cutler had acted as "house counsel" to the Gambino crime family. *United States v. Gotti,* 771 F.Supp. 552 (E.D.N.Y.1991). Judge Glasser based his decision on a significant amount of tangible evidence, including hours of surveillance tapes, and based on the extent of Cutler's legal representation of individuals whom the

---

1. A prior trial of the so-called "minor defendants" named in the indictment was completed on July 24, 1990, but that trial has no bearing on the considerations in this opinion.

2. Cases in which Cutler has represented individuals whom the Government asserts are associated with the Gambino crime family, include:

*United States v. Ruggiero, et al.,* 83 Cr. 412 (E.D.N.Y.) (Cutler represents Michael Coiro); *United States v. Gigante, et al.,* 90 Cr. 446 (E.D.N.Y.) (Cutler represents Peter Gotti); *United States v. Gambino, et al.,* 88 Cr. 919 (S.D.N.Y.) (the first trial in this case where Cutler represented Joseph Gambino).

Government asserts are associated with John Gotti. The Court of Appeals for the Second Circuit recently affirmed Judge Glasser's opinion in *United States v. Locascio*, 6 F.3d 924, 932 (2d Cir.1993), stating that "there was sufficient evidence for the district court to determine that Cutler had acted as house counsel to the Gambino crime family." *Id.* The Second Circuit held that Judge Glasser properly exercised his discretion in disqualifying Cutler. *Id.* 6 F.3d at 935–36.

In its motion papers, the Government has informed this Court that Cutler is being investigated by a grand jury in the Eastern District for allegations of tax crimes and obstruction of justice. Government's Memorandum at 6. The Government contends that surveillance tapes it possesses contain conversations indicating that Cutler was taking money from John Gotti "under the table," as payment for his legal representation of members of the Gambino crime family. *See Locascio*, 6 F.3d at 932 (citing *United States v. Gotti*, 771 F.Supp. at 565). The Government has also produced transcripts of taped conversations that the Government maintains link Cutler to "a scheme to have Anthony Rapino, a prospective grand jury witness, commit contempt of court rather that testify in the grand jury, as to his knowledge of the murder of Paul Castellano by Gotti and others in the Gambino crime family." Government Memorandum at Exhibit B 2–4.

. In order to assess fully and accurately the allegations against Cutler, and in order to evaluate the extent to which the on-going grand jury investigation in the Eastern District might interfere with Cutler's representation of Joseph Gambino in this case, this Court met *in camera*, on November 2, 1993, with Assistant United States Attorneys from the Southern District of New York ("Southern District") and Assistant United States Attorneys from the Eastern District of New York ("Eastern District"). At the application of the prosecutors from both Districts, this Court ordered the record of the November 2, 1993 meeting to be sealed. *See* Fed. R.Crim.P. 6(e).

**[By order of this Court, the portion of this opinion relating to the aforesaid *in camera* meeting is filed under seal.]**

### III. Procedural Background

The aforementioned trial in this case began before this Court on February 1, 1993. On June 4, 1993, the jury returned a verdict of guilty on the bail jumping count as to John Gambino and Joseph Gambino, but was unable to reach a verdict on the remaining counts. The Court declared a mistrial as to the counts on which the jury was unable to reach a verdict, and the Government immediately sought a new trial.

On October 15, 1993, the defendants moved this Court for an order barring a retrial based on double jeopardy because of alleged prosecutorial misconduct. That motion was denied in its entirety by this Court on November 12, 1993.

· On October 25, 1993, the Government moved this Court for an order disqualifying Cutler from representing Joseph Gambino. On November 4, 1993, in a one-page order, this Court denied the Government's motion, indicating that the instant opinion would follow.

### Discussion

### I. A Criminal Defendant's Right to Chosen Counsel

The Supreme Court's decision in *Flanagan v. United States*, 465 U.S. 259, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984), which held that orders disqualifying counsel are not immediately appealable under 28 U.S.C. § 1291, forces this Court to walk a fine line. On one hand, if counsel is not disqualified the client may nevertheless later "establish that an actual conflict of interest adversely affected his lawyer's performance," *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708, 1719, 64 L.Ed.2d 333 (1980), depriving him of his Sixth Amendment right to effective assistance of counsel. On the other hand, *Flanagan* forces a defendant whose lawyer is improperly disqualified to undergo trial without the counsel of his choice. A defendant convicted under such circumstances may claim that he too has been deprived of "a right of constitutional dimension"—the ability to pick his own lawyer. *United States v. Castellano*, 610 F.Supp. 1137, 1139 (S.D.N.Y.1985) (citing *United States v. Cunningham*, 672 F.2d

1064, 1070 (2d Cir.1982)). The weighty public interest in the finality of any judgment, particularly in a case which will take five to six months to try, militates in favor of great caution in disqualifying counsel. *See Castellano,* 610 F.Supp. at 1139–40.

In making this decision, this Court is mindful that the Sixth Amendment right to Counsel is necessary to insure fundamental human rights of life and liberty. *United States v. Cortland Bay Fulton,* 5 F.3d 605, 611 (2d Cir.1993) citing *Johnson v. Zerbst,* 304 U.S. 458, 462, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938). The importance of this right is evident in the words of Judge Friendly, who stated: "[o]f all the rights that an accused person has, the right to be represented by counsel is by far the most pervasive, for it affects his ability to assert any other rights he may have." *Cortland Bay,* 5 F.3d at 611 (citing Friendly, *Is Innocence Irrelevant? Collateral Attack On Criminal Judgments,* 38 U.Chi.L.Rev. 142, 152 (1970) (citations omitted)). The Sixth Amendment to the Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defence." U.S. Const. Amend VI. Moreover, this constitutional guarantee generally ensures a criminal defendant "the right to select and be represented by one's preferred attorney." *Wheat v. United States,* 486 U.S. 153, 159, 108 S.Ct. 1692, 1697, 100 L.Ed.2d 140 (1988). As Justice Marshall stated in his dissenting opinion in *Wheat:*

> This [Supreme] Court long has recognized, and today reaffirms, that the Sixth Amendment provides protection for a criminal defendant's choice of counsel. More than 50 years ago, [the Supreme Court] stated that "[i]t is hardly necessary to say that, the right to counsel being conceded, a defendant should be afforded a fair opportunity to secure counsel of his own choice." (citations omitted) [The Supreme Court's] statements on this score stem largely from an appreciation that a primary purpose of the Sixth Amendment is to grant a criminal defendant effective control over the conduct of his defense.

*Wheat,* 486 U.S. at 165, 108 S.Ct. at 1700 (Marshall, J., dissenting). Thus Justice Marshall observed that "[a]n obviously critical aspect of making a defense is choosing a person to serve as an assistant and representative." *Id.* at 166, 108 S.Ct. at 1700.

However, the Second Circuit has recognized that "[a] defendant's right to counsel of his choice is not an absolute one." *United States v. Cunningham,* 672 F.2d 1064, 1069 (2d Cir.1982) (citing *United States v. Ostrer,* 597 F.2d 337, 341 (2d Cir.1979)); *See Wheat,* 486 U.S. at 159, 108 S.Ct. at 1697. Though there is a presumption in favor of the accused's chosen counsel, this presumption can be overcome by a showing of an actual conflict or potentially serious conflict. *Wheat,* 486 U.S. at 164, 108 S.Ct. at 1699–1700; *United States v. Locascio,* 6 F.3d 924, 931 (2d Cir.1993). The defendant's right to counsel of his own choosing is not absolute in part because the Government, like the defendant, is entitled to and should receive a fair trial. In addition to insuring that both sides in a criminal case receive a fair trial, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat,* 486 U.S. at 160, 108 S.Ct. at 1698; *See United States v. Rogers,* 9 F.3d 1025, 1032 (2d Cir.1993); *Locascio,* 6 F.3d at 931.

Deciding motions to disqualify counsel necessarily require considerable conjecture by courts. As the Supreme Court stated in *Wheat:*

> Unfortunately for all concerned, a district court must pass on the issue whether or not to allow a waiver of a conflict of interest by a criminal defendant not with the wisdom of hindsight after the trial has taken place, but in the murkier pretrial context when relationships between parties are seen through a glass, darkly. The likelihood and dimensions of ascent conflicts of interest are notoriously hard to predict, even for those thoroughly familiar with criminal trials.

*Wheat,* 486 U.S. at 162, 108 S.Ct. at 1699.

Fortunately, however, this Court has had the benefit of having considered the evidence

in this case once already, and thus need not speculate to the same extent as other courts have when faced with such motions, as to the possible conflicts which may arise. This Court examines the possible conflicts not only as a Court fully familiar with criminal trials in general, but from the unique position of a Court that is thoroughly familiar with this particular criminal trial. While no one can predict with certainty the course a trial will take, significant light has been shed on the relationships of the parties, the potential testimony of witnesses, and other imponderables which are normally so difficult to discern prior to trial. Consequently, while this Court must still view this retrial through a looking glass, what it views is a road once travelled.

## II. Per Se Violation of the Sixth Amendment

Recent Second Circuit opinions have reaffirmed prior holdings that an attorney has an actual "conflict of interest when, during the course of representation, the attorney's and defendant's interests 'diverge with respect to a material fact or legal issue, or to a course of action.'" *Winkler v. Keane,* 7 F.3d 304, 307 (2d Cir.1993) (quoting *Cuyler v. Sullivan,* 446 U.S. 335, 356 n. 3, 100 S.Ct. 1708, 1722 n. 3, 64 L.Ed.2d 333 (1980)). The Second Circuit has also reaffirmed that "the *per se* rule [of this Circuit] applies only when there is an 'actual or constructive denial of the assistance of counsel altogether.'" *Winkler v. Keane,* 7 F.3d 304, 308 (2d Cir.1993) (quoting *Strickland v. Washington,* 466 U.S. 668, 692, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984)).

The Second Circuit has held "that there is an 'actual or constructive denial of the assistance of counsel,' *Strickland,* 466 U.S. at 692, 104 S.Ct. at 2067 and, as such, a *per se* violation of the Sixth Amendment in two limited circumstances: where defendant's counsel was unlicensed, and when the attorney has engaged in the defendant's crimes." *Cortland Bay,* 5 F.3d at 611. *See Solina v. United States,* 709 F.2d 160, 168–69 (2d Cir. 1983) (unlicensed counsel).

■ "The *per se* rule applies when an attorney is implicated in the crimes of his or her client since, in that event, the attorney cannot be free from fear that a 'vigorous defense should lead the prosecutor or the trial judge to discover evidence of the attorney's own wrong doing.'" *Cortland Bay,* 5 F.3d at 611 (citing *Bellamy v. Cogdell,* 974 F.2d 302, 307 (2d Cir.1992)). *See United States v. Cancilla,* 725 F.2d 867, 870 (2d Cir.1984) (attorney implicated in defendant's crimes). However, "the *per se* rule does not apply any time a court learns that an attorney may have committed a crime; the attorney's alleged criminal activity must be sufficiently related to the charged crimes to create a real possibility that the attorney's vigorous defense of his client will be compromised." *Cortland Bay Fulton,* 5 F.3d at 611; *See United States v. Aiello,* 900 F.2d 528 (2d Cir.1990).

■ In the case at the bar, the Government contends that Cutler should be disqualified because his representation of Gambino would constitute *per se* ineffective assistance of counsel. The Government bases its conclusion on the fact that Cutler is being investigated, *inter alia,* for alleged tax crimes, and alleged obstruction of justice. The Government contends that Cutler's alleged acts of obstruction, committed in concert with John Gotti and in furtherance of the interests of the Gambino crime family, are sufficiently related to the charged crimes to constitute a *per se* conflict, particularly since the proof to be offered at trial includes evidence of an act of obstruction of justice committed by the defendants.

In *Cortland Bay,* defendant Fulton was on trial for conspiracy to possess and import heroin. At trial, the Government notified the court that Lateju, a Government witness, claimed that on a prior occasion he had imported drugs that were either delivered to or belonged to defendant's counsel. *Cortland Bay,* 5 F.3d at 607–08. The allegations by the Government's witness, implicated Fulton's attorney in the same crimes for which Fulton was on trial. This placed Fulton's counsel in a conundrum. If the allegations were true, then lead counsel was involved in the same crimes as his client and with his client's co-conspirator. On the other hand, assuming the allegations were false, counsel would be precluded from challenging the wit-

ness's credibility since in doing so, he would be acting as an unsworn witness. *Id.* at 611. Thus Fulton's chosen counsel had an actual conflict of interest, requiring the application of the *per se* rule.

In assessing where alleged criminal conduct would suffice to cause a *per se* violation of the Sixth Amendment, the Second Circuit in *Cortland Bay* declined to draw a clear line. Instead the Court stated: "[w]hile we cannot say in the abstract where the line will be drawn that determines whether the attorney's criminal conduct is related to the charged crime, it is plain to us that this case crosses it." *Id.* at 611.

In *United States v. Cancilla,* 725 F.2d 867 (2d Cir.1984) the defendant was convicted of engaging in a scheme to collect fraudulent insurance claims. In an appeal of the conviction the Government stipulated that defendant's trial counsel had himself engaged in a similar insurance schemes with one of Cancilla's co-conspirators. The *Cancilla* Court found that the *per se* rule applied because of the "similarity of the counsel's criminal activities to Cancilla's schemes." *Id.* at 870. The situation in *Cancilla* was also complicated by two additional considerations, (1) Cancilla knew nothing of counsel's illegal activities, and had, accordingly, not submitted a *Curcio* waiver and (2) Cancilla's defense counsel purposely avoided a line of questioning which may have helped his client, but would have prejudiced a former client and implicated counsel. *Id.* The Second Circuit found that counsel's lack of vigorousness impaired the adequacy of the representation afforded Cancilla.

Viewed in the entirety of the circumstances, this Court declines to find a *per se* violation of the Sixth Amendment present in this case. Cutler's alleged criminal activity is not sufficiently related to the charged crimes such that they create the possibility that his vigorous representation of Joseph Gambino will be compromised.

The Government's motion papers indicate that Cutler is being investigated for alleged tax crimes. Government's Memorandum at 6, 18 n. 11. Specifically, the Government alleges that Cutler took payments "under the table" from John Gotti. See *Locascio,* 6 F.3d at 932 (citing *United States v. Gotti,* 771 F.Supp. at 565). The allegations of possible tax evasion or other tax crimes, while serious in nature, are not sufficiently related to the charged crimes to create a real possibility that the attorney's vigorous defense of his client will be compromised.[3] *Cortland Bay,* 5 F.3d at 611. See *United States v. Aiello,* 900 F.2d 528 (2d Cir.1990); See also, *Waterhouse v. Rodriguez,* 848 F.2d 375 (2d Cir. 1988) (charges pending against counsel were unrelated to his representation of defendant).

Cutler is also being investigated for alleged obstruction of justice. The Government has introduced transcripts of taped conversations that the Government alleges link Cutler to "a scheme to have Anthony Rapino, a prospective grand jury witness, commit contempt of court rather that testify in the grand jury, as to his knowledge of the murder of Paul Castellano." Government Memorandum at Exhibit B 2–4. In the present case, the Government plans to introduce evidence that the defendants, primarily John Gambino, participated in a scheme to obstruct justice by bribing a juror during the trial of *United States v. Edward Lino,* in the Eastern District. At the first trial, Government witness Salvatore Gravano testified that Joseph Gambino, or Lorenzo Mannino, drove John Gambino to a meeting where jury tampering was discussed. Trial Transcript of first trial *United States v. Gambino et al.,* 88 Cr. 919 (PKL) ("Trial Transcript"), dated April 13, 1993, at 4109–4110. The Government took the position in the first trial that the jury tampering was "an act that is directly in furtherance and is an uncharged predicate act of this racketeering enterprise and serves the objects [of the conspiracy]." Trial Transcript at 4039. The alleged jury tampering was admissible as proof of the means and methods of the enterprise, Indictment at ¶ 11(e), and as part of the objects of the enterprise. Indictment ¶ 10(c). On this basis, evidence of jury tampering was admitted in the first trial as "an uncharged predicate

3. [Footnote filed under seal pursuant to an Order of this Court]

act of th[e] racketeering enterprise," Trial Transcript at 4039, 4090.[4]

The Government now contends that because Cutler is being investigated for an obstruction of justice scheme, namely Rampino's contempt, and because the proof at trial going to the means and methods and objects of the enterprise, albeit not to a charge in the indictment, contains an obstruction of justice scheme, namely jury tampering, that this Court is compelled to disqualify defendant's chosen counsel based on *per se* ineffectiveness of counsel. This link is too tenuous to overcome the strong presumption in favor of defendant's chosen counsel.

While the submitted transcripts do not appear to establish conclusively that Cutler has engaged in obstruction of justice in the Rampino matter, even assuming these allegations to be true, the crime of obstructing justice by aiding contempt of a grand jury proceeding, is not sufficiently related to the charged crimes to constitute a *per se* violation of the Sixth Amendment. This conclusion is in part based on the fact that the alleged jury tampering is not a charged crime, but merely "an uncharged predicate act." Trial Transcript at 4039. The Second Circuit has clearly held that "The *per se* rule applies when an attorney is implicated in the crimes of his or her client." *Cortland Bay,* 5 F.3d at 611. Furthermore, "the attorney's alleged criminal activity must be sufficiently related to the charged crimes...." *Id.* at 611. Here Cutler has allegedly participated in an act of obstruction of justice. Cutler's act of obstruction is not the same act for which the Government plans on introducing proof at trial. Additionally, obstruction of justice is not a charged crime. *See Id.* Accordingly, Cutler's alleged wrongdoings are not sufficiently related to the charged crimes to constitute a *per se* violation of the right to counsel. *Id.*

**[By order of this Court this portion of this Opinion is to be filed under seal.]**

### III. In Exercising it's Discretion this Court Chooses Not to Disqualify Cutler

■ In *United States v. Gotti,* 771 F.Supp. 552 (E.D.N.Y.1991) Judge Glasser disqualified Cutler on a number of grounds. Judge Glasser in *Gotti* found the following: (1) Cutler acted as house counsel to the Gambino crime family, *Id.* at 560; (2) Cutler's participation in government-taped conversations at which illegal activity was discussed could make Cutler an unsworn witness before the jury in explaining his own conduct and providing his interpretations of the conversations to which he was privy, *Id.* at 562–63; (3) Cutler's prior representation of Michael Coiro, a potential Government witness, gave rise to a conflict of interest, *Id.;* and (4) the implication by Gotti in taped conversations that he, Gotti, had paid Cutler money "under the table" made Cutler a potential accomplice as well as a potential witness to Gotti's tax fraud. *Id.* at 565.

The Second Circuit in *United States v. Locascio, supra,* affirmed the district court's decision to disqualify Cutler, finding that it was not an abuse of discretion. *Locascio,* 6 F.3d at 935. The Second Circuit stated that while disqualification is a drastic measure, "the district court is in the best position to evaluate what is needed to ensure a fair trial." *Id.* 6 F.3d at 935. The Second Circuit found that "the district court made careful findings of fact on each qualifications," *Id.* and concluded "that the district court properly exercised its discretion in disqualifying Bruce Cutler and George Santangelo." *Id.*

The situation before this Court is significantly different from that presented in *United States v. Gotti,* 771 F.Supp. 552 (1991). Accordingly, this Court does not feel compelled to grant the Government's motion to disqualify. Of the grounds cited by Judge Glasser, the only one similar to this case is Cutler's role as house counsel. The Second Circuit has affirmed the findings of fact made by Judge Glasser, that Cutler has served as house counsel to the Gambino crime family.

---

4. The proof of alleged jury tampering was admitted at trial based on the Second Circuit's teachings in *United States v. Concepcion,* 983 F.2d 369 (2d Cir.1992) *cert. denied,* —— U.S. ——, 114 S.Ct. 163, 126 L.Ed.2d 124 (1993); *United States*

*v. Coiro,* 922 F.2d 1008 (2d Cir.) *cert. denied,* —— U.S. ——, 111 S.Ct. 2826, 115 L.Ed.2d 996 (1991); and *United States v. Bagaric,* 706 F.2d 42 (2d Cir.) *cert. denied,* 464 U.S. 840, 104 S.Ct. 133, 78 L.Ed.2d 128 (1983).

*Locascio,* 6 F.3d at 935. This presents a possible ground for disqualification, however, Judge Glasser's findings in *Gotti,* 771 F.Supp. at 552, do not compel this Court to disqualify Cutler.[5]

It is an important distinction in this case that the accusations of Cutler's alleged obstruction of justice do not come from a Government witness. Since the allegations of Cutler's criminal activities exist independent of any Government witnesses there is no danger that Cutler could not conduct cross examination. Additionally, Cutler is not in jeopardy of becoming an unsworn witness in relation to his alleged wrong doings. In fact, in the first trial of this action, there were no indications that Cutler was acting as an unsworn witness.

Throughout the course of the first trial, there were no indications that the parties did not receive a fair trial. The dangers that courts seeks to avoid through disqualification were not present. This Court saw no indication that Cutler's representation was anything less than vigorous; or that Cutler's interests were at odds with those of his client. Cutler conducted his cross examinations with tenacity and vigor. There was no indication that certain avenues of cross examination were avoided, or that the vigorousness of the defense was compromised. Additionally, Cutler consulted with co-counsel regarding trial strategy, so that counsel could present a well orchestrated and unified defense. The self serving nature that a court would expect an attorney to demonstrate if he were concerned with concealing certain information was not apparent in this case. *See Cancilla,* 725 F.2d at 870.

This Court has had the benefit of seeing and hearing all the evidence once already, and having a complete record to which to refer. This experience has placed this Court in a uniquely qualified position for ruling on this motion. Based on the experience of the prior trial, this Court does not foresee any problems created by the lack of conflict free counsel, which a knowing and intelligent *Curcio* waiver would not cure.

### Conclusion

For the above stated reasons the Governments motion hereby is denied.

### SO ORDERED.

---

5. It bears mention that George Santangelo was also found to be house counsel to the Gambino crime family, *Locascio,* 6 F.3d at 935; however, the Government does not move this Court to disqualify Santangelo in the instant action. At a pretrial conference before this Court on November 23, 1993, AUSA Richard B. Zabel informed the Court that the Government had no objections to Mr. Santangelo representing John Gambino in this matter, so long as Gambino was advised of the potential conflicts outlined in *United States v. Locascio,* 6 F.3d at 930.