OPINION OF THE COURT
DIXON, Chief Judge:
Here we have a case of first impression in the military. The fundamental issue before us is whether an accused may be convicted for obstruction of justice for reasonably relying upon, and acting upon, the pre-trial advice of his attorney. It forces us to examine the attorney/client relationship and to ask questions about that relationship. For example, in receiving pre-trial advice, when must an accused be on notice that he may not rely on his attorney’s advice and when must an attorney take steps to ensure that his advice does not result in criminal prosecution? After reviewing the entire record of trial and struggling with these questions, we conclude that this appellant was denied effective assistance of counsel. Under the facts of this case, we believe his conviction can not withstand a constitutional challenge. Exercising our authority under Article 66(c), UCMJ, 10 U.S.C. § 866(c), we set aside the conviction as a matter of law and direct that the charges be dismissed.
FACTS
Appellant, at the time of trial, was a 36 year-old technical sergeant with 17 years of active duty service. He was married with eight dependents. JS, appellant’s daughter by a prior marriage, came to Germany with *818 appellant in 1988 and lived with appellant and his second wife for approximately 3$ years. During this period, appellant began to have problems with JS and finally sent her back to the United States in March 1992 to reside with her mother. After living with her mother for 7 months, JS, then 11-years-old, wrote a note to her mother accusing appellant of molesting her while she was in Germany. On 4 January 1993, nearly three months later, the matter was reported to authorities and an investigation was initiated.
The record substantiates that appellant was a deeply religious person. He was a member of a charismatic sect and, consistent with his beliefs, frequently spoke in tongues and laid hands upon his children while engaging in prayer. When informed of the accusations, he vigorously denied the allegations made by his daughter and expressed total bewilderment about what had caused her to accuse him. Based upon the claims of JS which were set forth in a videotape interview, appellant was charged on 31 August 1993 with committing indecent acts upon his daughter. At the same time, appellant was given an order not to have further contact with his daughter. He complied with the order fully. JS did not appear at the pretrial investigation held in November 1993, but the investigating officer, after reviewing the videotape, recommended trial by general court-martial. See Article 32, UCMJ.
In late summer 1993, appellant hired Mr. Paul Narkin, a civilian attorney in Germany, to represent him. According to the appellant, sometime in early October and prior to the scheduled Article 32 investigation, he visited his attorney’s home. His military counsel was not present at this meeting. They discussed the case and appellant continued to profess his innocence. He could offer no reason why his daughter would lie. Based on defense assumptions that the accusations might relate to a custody battle, Mr. Narkin told appellant to call his ex-wife and offer her custody of their daughter as well as child support. He also told appellant to let his ex-wife know what the ramifications could be if JS continued her lying, to try and find out from his ex-wife if she was just using JS for some unknown purpose, and to find out where JS had gotten the idea about sexual abuse.
Appellant told his attorney that he was under an order from his commander to have no contact with his daughter. Mr. Narkin responded that he would not be talking with his daughter, but only to his ex-wife. That evening, purportedly following his attorney’s advice, appellant called his ex-wife in the United States and talked with her for approximately an hour. He discussed child support, custody, the ramifications to JS and his ex-wife if JS testified against him, urged his ex-wife to prevent JS from continuing to lie, and asked her to keep JS from coming to Germany to testify against him. The next day, appellant told his military defense counsel about the call that he made based on Mr. Narkin’s advice and was told that the call had not been a good idea. Appellant’s ex-wife reported the substance of appellant’s call to the legal office at Offutt Air Force Base, Nebraska. She provided a statement to the legal office and the statement was forwarded to the convening authority. On 8 November 1993, an additional charge of obstruction of justice was preferred against appellant. The specification alleged appellant endeavored to impede his trial by communicating to his ex-wife that “his attorneys would cremate” JS and “ruin her credibility” and that JS’s brother “would never work as an engineer” unless JS “would refuse to testify” at his trial. The next day, appellant fired Mr. Narkin. Military counsel represented appellant at the Article 32 investigation and at trial.
The hotly-litigated trial began on 21 January 1994, but, due to requested delays, did not conclude until 11 April 1994. Appellant entered pleas of not guilty to the charge of committing indecent acts as well as to the charge of obstructing justice. His daughter came to Germany to testify at the trial and was subjected to vigorous cross examination. Her testimony contained a number of inconsistencies and witnesses were called to establish that she had a history of lying. Testifying under oath, appellant denied the accusations. The defense called a number of witnesses to testify concerning his good character and primarily focused on a de *819 fense to the charge of committing indecent acts. After deliberating for nearly 3$ hours, members acquitted the appellant of committing indecent acts, but found him guilty of obstructing justice. He was sentenced on the obstruction of justice charge to a bad-conduct discharge and reduction to the grade of E-4. The convening authority approved the sentence as adjudged.
INEFFECTIVE REPRESENTATION
This case is unique among cases in which post-trial claims of ineffective assistance of counsel have been made. The claim is not that the appellant was prejudiced by some flawed defense strategy, by his attorney’s lack of preparation or by something his defense counsel neglected to do. Rather, the claim is based upon pre-trial advice provided to the appellant. Moreover, the claim is not merely that the advice was deficient, but also that it led directly to an additional charge of obstruction of justice.
Can pre-trial advice be the basis of an ineffective assistance of client claim? If so, what is the standard we apply in determining whether appellant is entitled to relief? First, we reach the conclusion that pre-trial advice can be the basis for the claim if, as here, the advice has a direct bearing on the trial itself. Second, we believe the two-pronged test which the Supreme Court formulated to decide ineffectiveness claims is fully applicable to this situation. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); United States v. Scott, 24 M.J. 186 (C.M.A.1987). Under the Strickland standard, an accused must establish both incompetence and prejudice to prevail on an ineffectiveness of counsel claim.
Central to this opinion is the conclusion that appellant’s telephone conversation with his ex-wife was made at the direction of appellant’s civilian lawyer. Appellant testified under oath that his attorney told him to make the call to his wife and offer her custody of their daughter. His ex-wife testified that appellant told her he was making the call because he had been advised to do so by his attorney. Among appellant’s clemency submissions is a statement signed by Mr. Narkin which confirms that he advised appellant to call his wife and offer her child custody.
Attempts by the government to locate Mr. Narkin and have him give an affidavit to explain the basis of his advice have been unsuccessful. In lieu of such an affidavit, the government urges us to find that it was not the advice of counsel which led to the additional charge but rather the way appellant carried out that advice. They point out the appellant was charged with obstructing justice not because he made the call but rather because he made threats during the call. While we understand the distinction which the government makes, it does not resolve the question of whether appellant was denied the effective assistance of counsel. We are not convinced that appellant knew that his telephone conversation with his ex-wife went beyond what his counsel had advised him to do. However, the important consideration is that his counsel was responsible for placing appellant in this ill-advised position.
To succeed on a claim of ineffectiveness of counsel, an accused must overcome the presumption of competence which all counsel enjoy. United States v. Cronic, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984). To rebut that presumption, appellant must show that the error, which in this case was the advice, was unreasonable under prevailing professional norms. The reasonableness of the advice must be assessed from counsel’s perspective in light of all the circumstances at the time it was given. Viewing Mr. Narkin’s advice to the appellant in terms of the prevailing professional norms, we can only conclude that it falls far short of reasonable competence. While the exact language of the instructions given to appellant by Mr. Narkin has not been revealed, we are satisfied he convinced appellant to make the call to his ex-wife for the purpose of thwarting JS’s testimony. Competent counsel should readily have seen that such advice could potentially subject his client to an obstruction of justice charge. However, there is no indication that Mr. Narkin cautioned appellant regarding this concern or took any steps to ensure appellant would not venture unknowingly beyond lawful bounds.
*820 We can scarcely imagine a situation which would lead a defense counsel to advise his client to contact the mother of an alleged sex abuse victim to discuss the victim’s testimony. Then, to suggest under those circumstances that the accused not only make an offer of child custody to his ex-wife but also explain to her the “ramifications” of her daughter testifying at trial makes such advice, in our view, clearly unreasonable. When coupled with the attorney’s failure to caution the client about the pitfalls inherent in such advice, we believe the circumstances establish incompetence. This appellant has clearly met the first prong of the Strickland standard by convincing us that his attorney’s advice was deficient.
Finally, we turn to the question of whether appellant was prejudiced by the deficient advice. We think the answer is obvious. The appellant would not have been charged with, or convicted of, obstruction of justice except for the actions he took as a result of his attorney’s advice. We stop short of holding that an accused may not be held accountable for criminal misconduct, including obstruction of justice, solely because he relies upon and follows his attorney’s advice. The advice of counsel should not shield an accused who knowingly commits a criminal act. When an attorney advises an accused to act in a manner the accused knows is criminal, the accused should not escape responsibility because his attorney’s advice was bad. For example, acting on the advice of counsel would not afford an accused any protection if he were to injure someone, violate a lawful regulation or take property belonging to someone else. The criminality of these acts are self-evident.
Similarly, when an accused receives deficient advice which might result in criminal prosecution and chooses to follow that advice after having the legal consequences fully explained, he does so at his peril. For example, if an accused were to follow the advice of civilian counsel after being told by military counsel that to do so would subject him to trial by court-martial, the accused would lose any right to claim that he did not know the wrongfulness of the advice. We are persuaded that this appellant was unaware of the legal consequences of following his attorney’s advice and had no reason to believe that adhering to that advice would result in additional charges. We conclude appellant has successfully met both prongs of the Strickland standard.
There are few rights more important to an accused under our system of justice than the right to effective representation of counsel. The Sixth Amendment to our Constitution establishes as one of this country’s fundamental principles that an accused in a criminal prosecution shall “have the assistance of counsel for his defence.” Our adversarial approach to justice simply cannot be relied upon to produce fair results if an accused is denied this right. Having found that appellant was denied that right in this case, we are required to grant him relief. We do so by overturning his conviction.
Unlike most instances in which an appellate court finds that an attorney has failed to adhere to required professional standards, this ineffectiveness of counsel can not be cured by a rehearing. Accordingly, we set aside the findings and the sentence and order that the charges be dismissed.
Senior Judge SCHREIER and Judge STARR concur.