U.S. v. Hicks

IN THE CASE OF
UNITED STATES, Appellee
v.
Tereasa HICKS, Private First Class
U.S. Army, Appellant
 
No. 97-0432
Crim. App. No. 9502205
 
United States Court of Appeals for the Armed
Forces
Argued May 11, 1999
Decided September 30, 1999

GIERKE, J., delivered the opinion of the
Court, in which COX, C.J., and CRAWFORD, J., joined. SULLIVAN and EFFRON,
JJ., filed dissenting opinions.

Counsel

For Appellant: Colonel John T. Phelps, II
(argued);, Lieutenant Colonel Adele H. Odegard, Major Leslie
A. Nepper, and Captain John C. Einstman (on brief).
For Appellee: Captain Kelly R. Bailey
(argued); Lieutenant Colonel Eugene R. Milhizer (on brief); Captain
Mary E. Braisted.
Military Judge: Robert F. Holland
 

THIS OPINION IS SUBJECT
TO EDITORIAL CORRECTION BEFORE PUBLICATION.

 
 

Judge GIERKE delivered the opinion of the Court.
A special court-martial composed of officer
and enlisted members convicted appellant, contrary to her pleas, of willfully
disobeying a lawful command from a superior commissioned officer and communicating
a threat, in violation of Articles 90 and 134, Uniform Code of Military
Justice, 10 USC §§ 890 and 934, respectively. The order in question
was a "no contact" order, prohibiting appellant from having contact with
the estranged wife of Corporal (CPL) B and her children. Appellant had
admitted that she was involved in a romantic relationship with CPL B and
was pregnant with his child. However, because the lawfulness of the order
was stipulated, evidence of this admission was not disclosed to the members.
The adjudged and approved sentence provides
for a bad-conduct discharge, confinement and partial forfeiture of pay
for 6 months, and reduction to the lowest enlisted grade. The Court of
Criminal Appeals affirmed the findings and sentence in an unpublished opinion.
This Court remanded the case for further factfinding
and a determination whether appellant was represented at trial by conflict-free
counsel. 49 MJ 158 (1998). The Court of Criminal Appeals obtained an affidavit
from appellant, asserting that she disobeyed the no-contact order because
a civilian lawyer, who also represented her at this special court-martial,
"advised [her] not to obey the order because it was bias [sic] and vague,"
and because CPL [B] "was never given the opportunity to rebute [sic] the
order."
The Court of Criminal Appeals did not obtain
an affidavit from the civilian lawyer. Therefore, there is no conflict
of affidavits to be resolved. See generally United States v.
Ginn, 47 MJ 236 (1997).
Upon further review, the Court of Criminal
Appeals rejected appellants claim of ineffective representation. The courts
reasoning was as follows:

Appellant testified twice under oath during
the merits, stating that she did not violate the terms of the order because
the incident in question did not happen at Mrs. Bs house. Appellant never
stated or inferred that her civilian lawyer (the same attorney who represented
her at her court-martial) told her: (1) to violate the order; or (2) that
she could violate the order without any possibility of punishment. Further,
appellant did not testify or imply that she violated the order because
she mistakenly believed that to do so was not a crime.

The court held that appellant received effective
assistance of counsel and found that her disobedience "was the product
of her knowing and willful choice to violate the order, and not the result
of any ineffective assistance of counsel or conflict of interest." Unpub.
op. at 2.
This Court granted review of the conflict-of-interest
issue.[1] Appellant argues
that, in order for her civilian lawyer to effectively represent her, he
would have had to raise the defense of mistake due to erroneous pre-trial
legal advice, thereby admitting his incompetence. Final Brief at 4. Thus,
appellant argues that the lawyer had an actual conflict of interest, id.
at 7, because he could not effectively defend appellant and defend the
propriety of his own conduct at the same time. For the reasons set out
below, we disagree.
The order in question was given to appellant
in writing by her commander, Captain (CPT) Gervais. It includes the following
directive language:

2. I order you to have no contact [with Mrs.
B], or her children, except for required court appearances or command directed
appearances.
3. I order you not to visit, see, speak to,
nor be in the immediate vicinity of [Mrs. B], or her children. Whether
you are on or off duty you are not to touch, go near, speak to, talk on
[the] phone to, write to or send any message to [Mrs. B], or her children.
You are not to go near [Mrs. Bs residence].

At trial, appellants defense counsel (the same
civilian attorney referred to in appellants affidavit) made a motion in
limine to preclude appellants commander from testifying about the
reasons for issuing the order. The military judge declined to grant the
motion in limine, opining "that if the lawfulness of an order is
challenged, then the Governments entitled to show what the commanders
basis for [issuing] the order is." Defense counsel then informed the military
judge that the defense did not "intend to challenge the lawfulness of the
order." Defense counsel stated, "Our position is it was a lawful order."
Thereafter, trial counsel and defense counsel, with the express consent
of appellant, stipulated that the order was given and that it was a lawful
order.
CPT Gervais testified that she gave the order
on February 22, 1995, at 1:15 p.m. She testified that appellant disobeyed
it within 40 minutes after it was given. A "General Counseling Form" reflects
that CPT Gervais received a telephone call from Mrs. B, complaining that
while she was talking to CPL B on the telephone, appellant called her vulgar
names. Appellant signed the form, indicating that she concurred in the
accuracy of the information on it.
CPT Gervais counseled appellant about the order
again on April 11, 1995. On this date, Mrs. B called CPT Gervais and complained
that CPL B and their son "were residing" with appellant. Appellant declined
to concur in the accuracy of the counseling form. She wrote, "I nonconcur
do [sic] to the grounds that I was advised by my civilian attorney that
the command order was bias [sic] and that CPL [B] has every right to have
his child in any visinity [sic] he deems proper, due to the grounds that
coustady [sic] has not been determined by a court of law."
The theory of the prosecution was that appellant
disobeyed the order by being in Mrs. Bs house and the yard. The theory
of the defense was that appellant attended a barbecue at a house approximately
1000 feet from Mrs. Bs house, parked her car 300-400 feet from Mrs. Bs
house, and was never "near" the house or Mrs. B. Appellant testified that
she did not disobey the order and that she was never in the house or the
yard, and she supported her testimony with corroborating witnesses. The
prosecution produced testimony that appellant and CPL B were seen in the
house and the yard.
When an alleged conflict of interest is at
issue, "a defendant who raised no objection at trial must demonstrate that
an actual conflict of interest adversely affected his lawyers performance."
Cuyler v. Sullivan, 446 U.S. 335, 348 (1980), quoted in United
States v. Breese, 11 MJ 17, 20 (CMA 1981). The burden of proof is on
the defense. United States v. Calhoun, 49 MJ 485, 489 (1998), citing
Strickland v. Washington, 466 U.S. 668, 687 (1984).
An allegation of ineffective representation
presents a mixed question of law and fact, which we review de novo.
United States v. Smith, 44 MJ 459, 460 (1996).
Appellant voluntarily stipulated that the order
was given and that it was lawful. She does not assert, and the record does
not show, that this stipulation was the product of any concern by her civilian
attorney for protecting himself from an accusation of giving bad advice.
Although defense counsel criticized the order
for vagueness in both his opening statement and closing argument, the focus
of his criticism was on the term "near." Appellants complaints about the
vagueness of the order before and after trial concerned the question how
"near" to Mrs. B she could be without violating the order. Appellants
complaint at her second counseling session was about applicability of the
order to contact with CPL Bs son. At no time before, during, or after
trial has appellant contended that she thought that being in Mrs. Bs house
or yard would not violate the order.
The factual contest at trial was a credibility
battle. The pivotal issue was not the legality of the order; it was whether
appellant was at Mrs. Bs house. The Government witnesses said appellant
was in Mrs. Bs house and the yard. Appellant and her witnesses said that
she was never closer than 300 feet from Mrs. Bs residence. There was no
issue whether 300 feet from the house was near enough to violate the order.
Thus, defense counsel had no actual conflict of interest.
The court below found that appellant was effectively
and vigorously defended. We agree.
The decision of the United States Army Court
of Criminal Appeals on remand is affirmed.
FOOTNOTE:
[1] The granted issue
is:
WHETHER APPELLANT WAS DENIED
HER SIXTH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE OF
THE CONFLICT OF INTEREST RAISED BY HER CIVILIAN DEFENSE COUNSELS REPRESENTATION
AT COURT-MARTIAL WHEN HIS ERRONEOUS LEGAL ADVICE REGARDING THE LAWFULNESS
OF APPELLANTS COMMANDERS ORDER LED TO ONE OF THE CHARGES AGAINST HER.
 
 
SULLIVAN, Judge (dissenting):
When I review the facts of this case, I think
of this core idea expressed by Oliver Wendell Holmes, Jr.:

When we study law we are not studying a mystery
but a well-known profession. We are studying what we shall want in order
to appear before judges, or to advise people in such a way as to keep them
out of court. . . . People want to know under what circumstances and how
far they will run the risk of coming against what is so much stronger than
themselves [the public force of the courts].

"The Path of Law," Collected Legal Papers
167 (New York: Harcourt, Brace and Company, 1921). More particularly, one
of the more noble functions of the profession of law is giving people advice
which will keep them from being charged with a crime and tried in a court
of law. In this case there is unrebutted evidence before us that the profession
of law may have failed Private First Class (PFC) Tereasa Hicks in this
vitally important matter.
In the trial record and in an unopposed affidavit
filed during this long appeal, there is evidence that
1. PFC Hicks, as a result of a domestic dispute,
was given an order by a superior officer "not to go near" Mrs. Bs residence.
2. After receiving this order, Hicks received
advice from a civilian attorney [Mr. Hansrote] that she didnt have to
follow "the order, because it was bias [sic] and vague."
3. After receiving this legal advice, Hicks
apparently violated the order.
4. After this violation of the order, she was
court-martialed and convicted of willfully disobeying the order of a superior
commissioned officer (as well as communicating a threat).
5. At trial, Hicks was represented by Mr. Hansrote,
the very attorney who gave her the legal advice before she disobeyed the
order.
Thus, the evidence in this record is that Hicks
disobeyed an order only after receiving legal advice that the "company
commander did not make the order clear enough to be followed." Unfortunately,
the defense attorney did not clear up this unrebutted view of Hicks that
she violated the order only after receiving advice from Mr. Hansrote ("After
I received this advice I did not follow the order."). I cannot join the
majority in affirming appellants convictions in these circumstances.
To better illustrate the conflict of interest
in this case, it might be helpful to draw an analogy between appellants
case and a civilian case where criminal charges might result from a client's
receiving bad advice from his attorney. See United States v.
Poludniak, 657 F.2d 948, 959 (8th Cir. 1981) (advice of
counsel can be considered on question of criminal willfulness), cert.
denied sub nom. Weigand v. United States, 455 U.S. 940 (1982).
If PFC Tereasa Hicks had received bad tax advice from attorney A before
filing her federal income tax and if Hicks had been indicted on federal-income-tax
charges as a result of filing a false income-tax return, it would almost
be impossible to imagine that attorney A would be allowed to represent
Hicks at trial. Para Technologies Trust v. Commissioner, T. C. Memo
1992-575, 64 T. C. M. (CCH) 922 (1992) (see Appendix). See
W. LaFave and A. Scott, Substantive Criminal Law, §5.1(e)(4)
at 596 n.131. Moreover if attorney B did try this case for Hicks, it is
impossible to imagine that attorney B would not put attorney A (who
gave the bad tax advice) on the stand as the principal witness for the
defense. See United States v. Cancilla, 725 F.2d 867, 870-71
(2d Cir. 1984).
The majority (like the court below in their
unpublished opinion) focus on everything but the conflict-of-interest issue.
They conclude:
1. "Defense counsel then informed the military
judge that the defense did not intend to challenge the lawfulness of the
order." ___ MJ at (4).
2. That there "was a credibility battle" at
trial on whether the order was violated. Id. at (6).
3. That the civilian defense counsel "effectively
and vigorously defended" appellant. Id. at (7).
Yet resolution of these points does not determine
the core of the granted issue on "the conflict of interest. . .[arising]
when [that defense counsels] erroneous legal advice regarding the lawfulness
of appellants commanders order led to one of the charges against her."
No, defense counsels informing the judge that he will not challenge the
legality of the order is precisely what a conflicted attorney would do
in order to avoid embarrassing himself by revealing to the court that before
his client violated the order, he told her the order was not lawful. As
for his client's losing the "credibility battle," that is not relevant
to whether Hicks' trial attorney had a conflict. With regard to the defense
counsel "effectively and vigorously" defending appellant, that is not determinative
of whether he had a conflict. The defense counsel is not charged with a
lack of vigor but with having a conflict of interest. Neither the trial
record nor the majority opinion adequately answer the conflict-of-interest
issue.
Here, Mr. Hansrote gave bad legal advice to
PFC Hicks before she violated the no-contact order (as the evidence at
trial and the unrebutted affidavit of Hicks indicates). He should never
have represented Hicks at the trial because the "probity of [his] own conduct"
was a "serious question" at this court-martial. ABA Model Rules of Professional
Conduct 1.7(b) and Comment to Rule 1.7 (Lawyer's Interests) (1989);
see United States v. Sorbera, 43 MJ 818 (A.F. Ct. Crim. App.
1996). If Mr. Hansrote had refused to represent Hicks at trial because
of his conflict of interest, another conflict-free attorney most likely
would have called Mr. Hansrote as a witness to tell the jury that his advice
to Hicks led to her court-martial on the charge of disobeying an order.
While I will not make any holding on whether the evidence of the bad legal
advice would have saved Hicks from a conviction, since the general rule
in the military is that one disobeys orders at ones peril, I will hold
that evidence of the advice that was given to Hicks certainly should have
been brought out at the sentencing hearing in extenuation of Hicks conduct.
See RCM 1001 (c)(1)(A), Manual for Courts-Martial, United States
(1995 edition)*/;
para. 216(j), Manual for Courts-Martial, United States 1969 (Revised edition).
A conflict-free attorney should have made this key argument at sentencing.
What I think needs to be done in this case
is to remand it for a hearing under United States v. DuBay, 17 USCMA
147, 37 CMR 411 (1967), to resolve this conflict-of-interest issue. See
generally United States v. Smith, 36 MJ 455, 457 (CMA 1993).
PFC Hicks claims that she was defended at trial by an attorney who advised
her not to obey the order that she was found guilty of violating. Clearly,
a court-martial based on due process of law demands that a client be represented
by an attorney free of such a conflict. See generally United
States v. Breeze, 11 MJ 17, 19 (CMA 1981). Let us make sure that PFC
Hicks received such representation at this trial. The record before us
now does not give us that assurance.
FOOTNOTE:
*/ This Manual
provision is cited to the version applicable at trial. The 1998 version
is unchanged.
 
 
EFFRON, Judge (dissenting):
As the majority notes, we previously remanded
this case for further factfinding and a determination whether appellant
was represented at trial by conflict-free counsel. 49 MJ 158 (1998). Upon
remand, the Court of Criminal Appeals obtained an affidavit from appellant
who asserted that she was advised by her attorney that the no-contact order
-- the order that she was convicted of violating -- was not a lawful order.
The court below did not obtain an affidavit from counsel who allegedly
provided that advice and then represented appellant at trial.
I agree with the majority that appellant did
not claim at trial that she violated the order in reliance upon her attorney's
advice that the order was unlawful; rather, she claimed at trial that she
did not engage in any activity that violated the no-contact order in the
first place. In that context, the potential conflict with her attorney
was not as stark as it would have been had she claimed that her behavior
was in reliance upon the attorney's advice.
Nonetheless, given the nature of the charge
-- willful disobedience of an order -- a potential conflict remained. Appellant
was faced with tactical choices at trial, including the options of: (1)
not testifying, but attacking the Government's case, e.g., through cross-examination,
with a view towards establishing a reasonable doubt; (2) testifying that
she was not present at the site and therefore did not violate the order;
or (3) adherence to that defense, but also presenting evidence of her attorney's
advice for purposes of arguing to the court-martial panel that even if
they found her to be present, they should take her attorney's advice into
account on the issue of willfulness. Likewise, on sentencing, she was faced
with similar tactical choices, in that she could have argued that, having
found her to be present in violation of the order, the members should consider
the effect of her attorney's advice as a matter in extenuation. RCM 1001(c)(1)(A).
In the absence of an affidavit from appellant's
counsel, the court below was in no position to determine what advice appellant's
counsel provided prior to the charged misconduct or the impact of that
advice upon the tactical decisions at trial. I would remand so that the
court below could order the necessary factfinding proceeding to make the
appropriate legal determinations. See United States v. DuBay,
17 USCMA 147, 37 CMR 411 (1967).

Home
Page  |  Opinions
& Digest  |  Daily
Journal  |  Public
Notice of Hearings